MARY H. HAAS (State Bar No. 149770)
  maryhaas@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 S. Figueroa Street, Suite 2400
Los Angeles, California 90017-2566
Telephone:  (213) 633-6800
Facsimile:  (213) 633-6899

STEPHEN M. RUMMAGE (admitted *pro hac vice*)
  steverummage@dwt.com
AMBIKA K. DORAN (admitted *pro hac vice*)
  ambikadoran@dwt.com
DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington  98101
Telephone:  (206) 757-8136
Facsimile:  (206) 757-7136


Attorneys for Defendant
ISTOCKPHOTO LP

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA SANDLER, an individual, ASIF AHMED, an individual, and others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>ISTOCKPHOTO LP, a Canadian corporation; and DOES 1-10, inclusive,<br><br>　　　　　　Defendants. | Case No. 2:15-cv-03659-MMM-JEM<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS THE AMENDED COMPLAINT; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:　　February 8, 2016<br>Time:　　10 a.m.<br>Ctrm.:　　780<br>Judge:　　The Hon. Margaret M. Morrow<br><br>[Filed concurrently with Declarations of Joy Griffith and Stephen M. Rummage; Request for Judicial Notice; and [Proposed] Order] |

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 8, 2016 at 10:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Margaret M. Morrow in Courtroom 780 of the above-entitled Court, located at 255 East Temple Street, Los Angeles, CA 90012-3332, defendant iStockphoto LP ("iStock") will and does move to dismiss the Amended Complaint of plaintiffs Lisa Sandler and Asif Ahmed pursuant to Federal Rule of Civil Procedure 12(b)(6) and on the grounds of forum non conveniens.  iStock makes this Motion on the following grounds:

1.     Plaintiffs' claim under the California gift certificate law, Cal. Civ. Code § 1749.5 et seq., fails because that statute does not permit private claims.

2.     Plaintiffs' claim for unlawful practices under the California Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200, fails because the Amended Complaint fails to allege credits sold by iStock for use in licensing photographs are "gift certificates."

3.     Plaintiffs' claim for unfair practices under the UCL fails because the Amended Complaint does not allege any reasons why iStock's policy on expiration of credits for use in licensing photographs is "unfair," as that term is used in the UCL.

4.     Plaintiffs' claims for fraudulent practices under the UCL and violation of the False Advertising Law ("FAL"), Bus. & Prof. Code § 17500, fail because plaintiffs fail to identify the allegedly false statements that form the basis for their claims or plausibly allege they relied on those statements.

5.     Plaintiffs' claim for unjust enrichment fails because they have not alleged iStock's acceptance of payment in exchange for the right to purchase credits was unjust.

6.     Plaintiffs filed their lawsuit in the wrong forum because they agreed to litigate any issues arising from their purchase of credits from iStock in Alberta, Canada.

NOTICE OF MOTION AND MOTION TO DISMISS
DWT 28117109v6 0053349-000111

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

iStock bases this Motion upon this Notice; the attached Memorandum of Points and Authorities; the Declarations of Joy Griffith and Stephen M. Rummage; the Request for Judicial Notice; all pleadings and records on file in this action; any matters of which the Court may take judicial notice; and such other evidence and/or argument as may be presented to this Court at the hearing on this Motion.

iStock makes this Motion after a conference of counsel on August 12, 2015, followed by email exchanges and a further conference on October 29, 2015, pursuant to Local Rule 7-3.  *See* Declaration of Stephen M. Rummage ¶ 2.

DATED: November 2, 2015            DAVIS WRIGHT TREMAINE LLP


By:_____*/s/ Mary H. Haas*_____
         Mary H. Haas
         Stephen M. Rummage
         Ambika K. Doran
    Attorneys for iStockphoto LP

NOTICE OF MOTION AND MOTION TO DISMISS
DWT 28117109v6 0053349-000111

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

Plaintiffs Lisa Sandler and Asif Ahmed allege credits they bought, which they could redeem to license stock photographs (apparently for business use) from the website of Defendant iStockphoto LP ("iStock"), are "gift certificates" under the federal Credit CARD Act and the California gift certificate statute.  But these laws protect gift givers and recipients, not purchasers of copyright licenses for business use.  When plaintiffs bought these iStock credits, they expired after one year. Plaintiffs tacitly concede they knew this when they decided to buy the credits.  But they claim the expiration policy violated the California gift card statute and Unfair Competition Law.  They also claim iStock made false statements about a revised policy, under which credits do ***not*** expire unless a user fails to log in for one year. And they seek to represent a class of California plaintiffs.

Because plaintiffs' claims fail as a matter of law, the Court should dismiss the Amended Complaint.

***First***, the Amended Complaint fails to allege the credits are "gift certificates" under the CARD Act or California's gift certificate law.  The statutes, cases interpreting them, legislative history, and a commonsense understanding of the term "gift certificate" all make clear credits bought on the Internet and used to license stock photos are not "gift certificates."  Rather, Congress and the California Legislature intended to address a specific problem:  the expiration of certificates given as ***gifts*** for a specified dollar amount, which a consumer recipient may use to purchase goods or services for personal use.  The Amended Complaint does not allege plaintiffs (or anyone else) bought iStock credits as "gifts" or for personal use, that the credits are worth a specified amount of money (because they are not), or that they are redeemable for "goods and services" (since the Complaint alleges only that they can be used to buy ***licenses*** to use photos).  Because the Amended Complaint fails to allege the credits are "gift certificates," the Court should dismiss plaintiffs'

"unlawful" practice UCL claim, the only means for private enforcement of the California gift certificate law and the only basis for plaintiffs' CARD Act claim.

*Second*, the Amended Complaint fails to allege a claim for "unfair" practices under the UCL.  No principle of law (or common sense) makes it inherently unfair for iStock's digital credits to expire after one year, particularly given plaintiffs' failure (and inability) to allege they lacked notice that expiration of their credits was part of the bargain they made when buying the credits.

*Third*, the Amended Complaint fails to allege a claim for "fraudulent" practices or violation of California's false advertising law because plaintiffs identify no false statements iStock allegedly made on which they relied.  The only allegedly false statement pertains to iStock's new policy—which actually makes it *less* likely that credits would expire—but plaintiffs do not allege (nor could they) that they purchased any credits governed by that policy.

*Fourth*, the Amended Complaint fails to allege a claim for unjust enrichment because their allegations do not explain why any benefit iStock retained was unjust, given that plaintiffs essentially concede they received exactly the benefit for which they bargained:  the right to license iStock images from iStock using purchased credits for up to a year after those credits were purchased.

*Fifth*, in addition to these substantive deficiencies, plaintiffs brought this case in the wrong place.  When they became members of iStock, an Alberta, Canada company, they consented to a membership agreement requiring that "any claims or disputes arising [under their agreements] shall be submitted to the exclusive jurisdiction and venue of the courts of the Province of Alberta."  Clauses of this nature carry near-determinative weight, except in unusual circumstances.  *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 134 S. Ct. 568, 580 (2013).  Plaintiffs cannot show unusual circumstances.  The Court should dismiss in deference to the agreed Alberta forum.

**Davis Wright Tremaine** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## II.    FACTUAL BACKGROUND

### A.    Plaintiff Alleges iStock, a Canadian Company, Unlawfully Allows Expiration of Credits for Photo Licenses.

The Amended Complaint alleges iStock is a Canadian company headquartered in Alberta, Canada, that operates a website on which customers may license stock photographs.[1]  ¶¶ 20, 34, 55, 64, 86.[2]  Customers may register for a subscription to a collection of images or buy credits that they can use to license individual images on a "pay-as-you-go" basis.  *Id.*  ¶¶ 2, 12, 20, 55, 64, 86.  This lawsuit concerns the credit purchase model.  *Id.*  Until late 2014, iStock credits expired if customers did not use them within one year of purchase.  *Id.* ¶¶ 2, 3, 4, 37, 58, 68, 87.  In or about December 2014, iStock changed its policy, so credits would no longer expire unless a customer failed to log into his account for one year.  *Id.* ¶¶ 4, 37, 58, 68, 87.

Ms. Sandler and Mr. Ahmed, Los Angeles residents, were iStock customers.  *Id.* ¶¶ 8-11.  Ms. Sandler alleges she bought credits four separate times:  on May 5 and June 28, 2009, and March 6 and June 2, 2011.  *Id.* ¶¶ 8, 40.  For two of these purchases—on June 28, 2009, and June 2, 2011—some of her credits expired.  *Id.*

---

[1] "In 'stock photography,' the photographer usually makes the images before he has a customer.  He then contracts with a stock agency for the agency to handle copyright registration and licensing, often for a cash payment up front to the stock agency and a percentage of whatever the stock agency collects.  Purchasers buy permission from the stock agency to use particular pictures, usually for a limited number of copies, with the prices varying from less than a dollar to perhaps a couple of hundred dollars." *Alaska Stock, LLC v. Houghton Mifflin Harcourt Publ'g Co.*, 747 F.3d 673, 676 (9th Cir. 2014).  The stock photography industry generally serves business customers, such as design and advertising professionals, print media, and online publishers.  *See Ryan v. Aer Lingus*, 878 F. Supp. 461, 466 n.1 (S.D.N.Y. 1994) (a "stock photography house is a business establishment that provides negatives or transparencies ('stock photography') to customers who seek them for advertising or similar purposes for one time or limited use").

[2] The Complaint alleged customers could "license" images from iStock.  *See* Complaint [Dkt. 1] ¶¶ 34, 49, 57, 65.  After iStock moved to dismiss based in part on the argument that California's gift card law applies to the purchase of "goods or services," not licenses, Dkt. 20 at 10, plaintiffs filed their Amended Complaint, now alleging customers may "obtain/purchase licensed stock photography/images."  As iStock explains below, this artful change does not overcome its original argument.

3

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

¶¶ 1, 2, 9, 40.  Mr. Ahmed alleges he bought credits on April 27, 2012, and that some of those credits expired eighteen months later, on October 30, 2013. *Id.* ¶¶ 1, 2, 11, 41.  The Amended Complaint does not allege the purposes for which either plaintiff used credits to purchase licenses from iStock.  It also does not allege the credits have any specific monetary value.  And it does not allege that any of the plaintiffs' credits expired under the revised policy implemented in December 2014.

Ms. Sandler filed her complaint May 14, 2015, alleging the expiration policy violates the Credit Card Accountability Responsibility and Disclosure Act of 2009 ("CARD Act"), 15 U.S.C. § 1693, and the California gift certificate law, Cal. Civ. Code § 1749.5 et seq.  Complaint [Dkt. 1] ¶¶ 49-63.  Her theory rested on the notion that iStock credits are "gift certificates" under those laws. *Id.* ¶¶ 32, 50, 58.  The Complaint also alleged the expiration policy is unfair and unlawful in violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200. *Id.* ¶¶ 64-72.  After iStock filed a motion to dismiss, Dkt. 20, Ms. Sandler amended her complaint to add Mr. Ahmed as a co-plaintiff, remove the CARD Act claim, and add claims for unjust enrichment, fraudulent practices under the UCL, and false advertising under Cal. Bus. & Prof. Code § 17200. *See* First Amended Complaint ("FAC") [Dkt. 27] ¶¶ 74, 77-92.  Plaintiffs base the latter two claims on allegedly false statements they fail to identify. *See id.* ¶ 74 (alleging iStock "disseminat[ed] through its website and other promotional channels, misleading and partial statements about iStockphoto credits … [and] omitted material information about the credits"); ¶ 79 ("Defendant…  extensively market[s] and advertise[s] the credits with misleading and illegal expiration dates and other deceptive terms"); ¶ 80 (iStock "disseminat[ed] … advertising concerning its credits, which by its nature is unfair, deceptive, untrue, or misleading"); ¶ 81 (referring to "numerous material misrepresentations as set forth more fully elsewhere in the Complaint").  The remainder of the Amended Complaint identifies just one allegedly false statement— i.e., that "credits never expire"—which pertains to iStock's policy as revised in

2014—which apparently never applied to plaintiffs, as they never purchased any credits subject to that policy. *Id.* ¶ 4.

Plaintiffs seek to represent a class of "[a]ll California users of iStockphoto's stock photography/image website that purchased pre-paid credit[s] or tranches of credits for use on the website that later expired within the applicable statute of limitations." *Id.* ¶ 45. They seek seeks damages, restitution, and injunctive relief.

## B. The Agreement Governing Plaintiff's Purchases of Credits Requires Customers to Bring Litigation in Alberta, Canada.

Until this year, iStock operated exclusively in Canada, with relationships with third parties across the globe. Griffith Decl. ¶ 5. The iStock website is available worldwide and served members in more than 250 countries in each of the years 2009, 2010, and 2011; approximately 30 to 40 percent of customers in those years were outside the United States and Canada. *Id.* ¶ 6. Because of its worldwide scope, iStock requires members to agree to bring any litigation exclusively in Alberta, where it is headquartered. *Id.* ¶ 9 Exs. B, C. For the entire period during which plaintiffs transacted business with iStock, the iStock Membership Agreement, to which a customer must assent before purchasing credits, states:

> The Site is controlled, operated and administered by iStockphoto from within the Province of Alberta, Canada. The Site can be accessed from all provinces and territories of Canada, as well as from other countries around the world. As each of these jurisdictions has laws that may differ from those of the Province of Alberta, by accessing the Site, you acknowledge and agree that this Membership Agreement will be governed under the laws of the Province of Alberta and the federal laws of Canada applicable therein (without reference to conflicts of laws principles). ***You hereby irrevocably submit to the exclusive***

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

> *jurisdiction of the Courts of the Province of Alberta,*
> *Canada with respect to the subject matter of this*
> *Membership Agreement.*

*Id.* Exs. B, C (emphasis added). In defiance of these terms, plaintiffs have sued in California, alleging violations of California and federal law.

### III. ARGUMENT

### A. This Court Should Dismiss under Fed. R. Civ. P. 12(b)(6).

Rule 12(b)(6) exists to weed out undeserving complaints. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). The rule "asks for more than a sheer possibility that a defendant has acted unlawfully. ... Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 884 (C.D. Cal. 2013) (Morrow, J.) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Dismissal is proper where a complaint manifests either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Here, the Court should dismiss Plaintiffs' claims because the Amended Complaint does not allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Further, some of the facts alleged negate any right to relief, entitling iStock to dismissal with prejudice.

Dismissal of plaintiffs' claims for fraudulent practices under the UCL and violation of the California false advertising law ("FAL") is also proper under the heightened pleading standard of Fed. R. Civ. P. 9(b). A UCL fraud claim "is said to be 'grounded in fraud' or to 'sound in fraud' and the pleading … as a whole must satisfy the particularity requirement of Rule 9(b)." *Kearns v. Ford Motor C*o., 567 F.3d 1120, 1125 (9th Cir. 2009); *see also Sandoval v. Mercedes-Benz USA, LLC,*

NOTICE OF MOTION AND MOTION TO DISMISS
DWT 28117109v6 0053349-000111

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

2013 U.S. Dist. LEXIS 188997, at *38-39 (C.D. Cal. 2013) (Morrow, J.) (dismissing UCL claim sounding in fraud for failure to satisfy Rule 9(b)). "District courts in California have consistently held ... that claims under California's FAL are grounded in fraud." *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1122 (C.D. Cal. 2010); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003) (applying Rule 9(b) to portions of FAL claim alleging fraud).

### 1. Plaintiffs Fail to State a Claim under California's Gift Certificate Statute and for Unlawful Practices under the Unfair Competition Law.

Plaintiffs' first claim for relief alleges a violation of California's gift certificate statute, Cal. Civ. Code § 1749.5 et seq. FAC ¶¶ 54-62. The Court may readily dispose of that claim, as the statute does not afford a private right of action. *See* Cal. Civ. Code § 1749.5 et seq.

The Court should also reject plaintiffs' attempt to assert a violation of the CARD Act and California gift certificate statute using the UCL as a vehicle. The UCL, which prohibits "any unlawful … business act or practice," Cal. Bus. & Prof. Code § 17200, borrows violations of other laws and makes them actionable as "unlawful" practices. *State Farm Fire & Cas. Co. v. Superior Court*, 45 Cal. App. 4th 1093, 1103 (1996). But "to state a claim for an 'unlawful' business practice under the UCL, a plaintiff must assert the violation of [an]other law." *Yumul v. Smart Balance, Inc.*, 2011 WL 1045555, at *12 (C.D. Cal. Mar. 14, 2011) (Morrow, J.) (citation omitted). Here, Plaintiffs' "unlawful" claim rests on iStock's alleged violation of the CARD Act and California gift certificate law. FAC ¶ 72. But they fail to allege a violation of either law.

### a. The CARD Act Claim Cannot Provide a Basis for the "Unlawful Practices" UCL Claim.

The 2009 CARD Act changed federal credit card law in several ways. This case revolves around an amendment to the Electronic Fund Transfers Act ("EFTA")

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

to regulate "gift certificates," "store gift cards," and "general-use prepaid cards." 15 U.S.C. § 1693*l*-l. The new statute prohibits "sell[ing] or issu[ing]" a gift certificate that is "subject to an expiration date ... [unless] the expiration date is not earlier than 5 years after the date on which the gift certificate was issued… and the terms of expiration are clearly and conspicuously stated." 15 U.S.C. § 1693*l*–1(c).

Plaintiffs allege iStock credits are "gift certificates," that credits they bought in 2009, 2011, and 2012 expired in violation of the CARD Act, and that iStock therefore committed an "unlawful" practice in violation of the UCL. FAC ¶¶ 67, 72. But EFTA's one-year statute of limitations bars this claim. Further, the Amended Complaint fails to allege the credits are "gift certificates" as the CARD Act uses that term. The CARD Act therefore cannot provide a basis for plaintiffs' UCL claim.

### (1)   The CARD Act's statute of limitations bars plaintiffs' claims.

A person claiming a violation of EFTA, including the CARD Act, must bring his action "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1693m(g). *See Sucec v. Greenbrier*, 2012 WL 3079233, at \*3 (S.D. W. Va. 2012) (reciting one-year statute of limitations for CARD Act) (dicta), *report and recommendation adopted*, 2012 WL 3079212 (S.D. W. Va. 2012). A plaintiff alleging a violation of EFTA who does not bring his claim within the statute of limitations cannot allege a claim under the UCL. *O'Donovan v. CashCall, Inc.*, 2012 WL 2568174, at \*3-4 (N.D. Cal. 2012) (EFTA one-year statute of limitations governs UCL claim predicated on EFTA violation).

Here, Ms. Sandler alleges she bought credits that expired one year after she purchased them on June 28, 2009 and June 2, 2011. FAC ¶¶ 9, 40. The alleged "violation"—that is, the expiration of the credits—therefore occurred on June 28, 2010 and June 2, 2012, respectively. Mr. Ahmed alleges he purchased credits April 27, 2012, some of which expired October 30, 2013. *Id.* ¶¶ 11, 41. Because plaintiffs did not file suit until May 14, 2015—more than a year and a half after the latest

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

expiration date for all purchased credits at issue—the Amended Complaint fails to allege a violation of the CARD Act.[3]

### (2)   Plaintiffs fail to allege iStock credits are "gift certificates" under the CARD Act.

The Amended Complaint also fails to allege a violation of the CARD Act because plaintiffs fail to allege iStock credits are "gift certificates."  Under the CARD Act, a "gift certificate" includes "an electronic promise that is…

(i) redeemable at a single merchant or an affiliated group of merchants that share the same name, mark, or logo;

(ii) issued in a specified amount that may not be increased or reloaded;

(iii) purchased on a prepaid basis in exchange for payment; and

(iv) honored upon presentation by such single merchant or affiliated group of merchants for goods or services.

15 U.S.C. § 1693*l*-1(a)(2)(B).

Congress delegated to the Federal Reserve System's Board of Governors the authority to "prescribe regulations to carry out the purposes" of EFTA, which encompasses the CARD Act.  15 U.S.C. § 1693b(a).  *See also Olen v. N. Tier Retail, LLC*, 2012 WL 1580994, at *2 (D. Minn. 2012).  The Board did so in Part 205 of Title 12 of the Code of Federal Regulations ("Regulation E"), which "administers the EFTA as dictated by the statute."  *Id.*  Regulation E has "controlling weight unless [it is] arbitrary, capricious, or manifestly contrary to the statute."  *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843–44 (1984).  Applying this principle, courts have given *Chevron* deference to Regulation E.  *See, e.g.*, *Olen*,

---

[3] The UCL's four-year statute of limitations also bars Ms. Sandler's California claims premised on the expiration of credits before May 14, 2011, including her purchase on June 28, 2009.  *See Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1322-23 (C.D. Cal. 2013) (Morrow, J.) (unfair competition claims "are subject to a four-year statute of limitations") (quoting *Karl Storz Endoscopy– Am., Inc. v. Surgical Techs., Inc.*, 285 F.3d 848, 857 (9th Cir. 2002)).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

2012 WL 1580994, at \*3; *see also Am. Exp. Travel Related Servs. Co. v. Sidamon-Eristoff*, 755 F. Supp. 2d 556, 590-91 (D.N.J. 2010) (deferring to Federal Reserve's comment as "an agency interpretation of the CARD Act"), *aff'd*, 669 F.3d 359 (3rd Cir. 2012).  A court should dismiss an EFTA claim "when neither the language of the statute nor a provision of Regulation E applies to the defendant's conduct."  *Olen*, 2012 WL 1580994, at \*2.  Here, iStock's alleged conduct falls outside the scope of the CARD Act and Regulation E.[4]

     *First*, plaintiffs do not allege they purchased the credits for personal, family, or household purposes (nor could they, based on information available to iStock), as required to assert an EFTA violation.  The EFTA protects *only* consumers, not businesses.  12 C.F.R. § 205.1(b) ("The primary objective of the act ... is the protection of individual consumers."); 15 U.S.C. § 1693(b) ("The primary objective of this subchapter … is the provision of individual consumer rights.").  Thus, Regulation E defines "gift certificate" as "a card, code, or other device ... [i]ssued on a prepaid basis *primarily for personal, family, or household purposes*."  12 C.F.R. § 205.20(a)(1) (emphasis added); *see also* 12 C.F.R. § 205, Supp. I ¶ (20)(a).[4] ("Section 205.20 *only* applies to cards, codes, or other devices that are sold or issued to a consumer primarily for *personal, family, or household purposes*.") (emphasis added).  If a person buys a card, code or device "to purchase … business-related items," it is not a "gift certificate" under the CARD Act.  *Id.* § 205, Supp. I ¶ (20)(a).5.ii (staff interpretation of Regulation E); *see also, e.g.*, *Fischer & Mandell LLP v. Citibank, N.A*, 2009 WL 1767621, at \*3 (S.D.N.Y. 2009) (EFTA inapplicable to Interest on Lawyer's Account because law "does not apply to accounts that are used primarily or solely for commercial purposes").

     *Second*, although plaintiffs assert iStock credits "are issued in specified

---

[4] The Board's interpretation of its own regulations likewise "is controlling … unless plainly erroneous or inconsistent with the regulation."  *Go v. Holder*, 744 F.3d 604, 610-11 (9th Cir. 2014) (internal quotation marks omitted).

NOTICE OF MOTION AND MOTION TO DISMISS
DWT 28117109v6 0053349-000111

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

amounts" and are "not reloadable," FAC ¶ 66, they allege no facts supporting this conclusory (and erroneous) statement.  A gift certificate under the CARD Act must be issued "*in a specified amount* that may not be *increased or reloaded*."  15 U.S.C. § 1693*l*-1(a)(2)(B)(ii) (emphasis added); *see also* 12 C.F.R. § 205.20(a)(1) ("[g]ift certificate means a card, code, or other device… in a specified amount that may not be increased or reloaded in exchange for payment"); *id.* § 205.20(b)(2) (excluding from "gift certificate" definition any "card, code or other device … [r]eloadable and not marketed or labeled as a gift card or gift certificate").  If a card "does not have a *monetary value*," it is "not 'issued in a specified amount.'"  12 C.F.R. § 205, Supp. I ¶ 20(b)(6).2.i (emphasis added); *see also Hughes v. Corepower Yoga, LLC*, 2013 WL 1314456, at *6 (D. Minn. 2013) ("Class Packs" redeemable for yoga classes not issued in a "specified amount" and therefore not subject to CARD Act); 12 C.F.R. § 205, Supp. I ¶ 20(a).3 (card, code, or device redeemable for a specific good or service, such as an airline flight, is "generally not subject to" the CARD Act because it is "not issued to a consumer 'in a specified amount'").  And a "card, code, or other device is 'reloadable' if the terms and conditions of the agreement permit funds to be added to the card, code, or other device after the initial purchase or issuance." *Id.* § 205, Supp. I ¶ (20)(b).1.  Plaintiffs fail to allege facts leading to the inference that iStock credits have a "monetary value," as the CARD Act requires.  *Hughes*, 2013 WL 1314456, at *6 (yoga credits not in a "specified amount" under CARD Act).  They also fail to allege (as the statute requires) they lacked the ability to add credits to "increase" their existing balance.

**Third**, plaintiffs fail to allege credits are redeemable "for goods or services." 15 U.S.C. § 1693*l*-1(a)(2)(B); *see also* 12 C.F.R. § 205.20 ("Gift certificate means a card, code, or other device … [r]edeemable … for goods or services.").  Although neither EFTA nor Regulation E defines "goods" or "services," the terms have ordinary meanings.  In general, "goods" refers to "[t]angible and movable personal property other than money; esp., articles of trade or items of merchandise <goods and

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

services>."  "Goods," Black's Law Dictionary (10th ed., Garner, Ed.); *see also* Cal. Civ. Code § 1761(a) (defining goods for CLRA as "tangible chattels"); *Sys. Unlimited, Inc. v. Cisco Sys., Inc.*, 228 F. App'x 854, 859 (11th Cir. 2007) ("The sale of intellectual property, which is what is involved here, is not a transaction in goods.") (citing Cal. Com. Code § 2102 and Fla. Stat. § 672.102).  And "services" generally refers to "the performance of some useful act or series of acts for the benefit of another, usu. for a fee <goods and services>."  "Service," Black's Law Dictionary (10th ed., Garner, Ed.); *see also* Cal. Civ. Code § 1761(b) (defining services for CLRA as "work, labor, and services ... including services furnished in connection with the sale or repair of goods").  The Amended Complaint alleges the credits are available to "obtain/purchase licensed stock photography /images," i.e., to purchase licenses. FAC ¶¶ 2, 34, 55, 64, 86.[5]  Nothing in the Amended Complaint explains how copyright licenses might be regarded as goods or services.

Thus, plaintiffs have not adequately pled a CARD Act claim.

### (3)   Plaintiffs fail to allege iStock credits Are "Gift Certificates" under the California gift certificate statute.

The California gift certificate law makes it unlawful "to sell a gift certificate to a purchaser" with "[a]n expiration date."  Cal. Civ. Code § 1749.5(a)(1).  The statute "does not define the term [gift certificate]."  *Freeman v. Wal-Mart Stores, Inc.*, 111 Cal. App. 4th 660, 666 (2003); *see also* Cal. Civ. Code § 1749.45 ("gift certificate"

---

[5] The original Complaint expressly alleged customers "license" images from iStock.  *See* Complaint [Dkt. 1] ¶¶ 34, 49, 57, 65.  The Court may consider these prior allegations.  *See McKenna v. WhisperText*, 2015 WL 5264750, at *3 (N.D. Cal. 2015) ("When evaluating an amended complaint, '[t]he court may also consider the prior allegations as part of its "context-specific" inquiry based on its judicial experience and common sense to assess whether' an amended complaint 'plausibly suggests an entitlement to relief.'") (citation omitted), *appeal filed*, No. 15-16697 (9th Cir. Oct. 7, 20154)); *Fasugbe v. Willms*, 2011 WL 2119128, at *5 (E.D. Cal. 2011) ("[T]he court need not ignore the prior allegations in determining the *plausibility* of the current pleadings.").

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

includes "gift card").[6]  But cases interpreting the statute, the ordinary meaning of the term "gift certificate," other provisions of the statute, and its legislative history make clear the law does not encompass credits that afford the means to license stock photography for advertising and other commercial use.

"To ascertain the common meaning of a word, 'a court typically looks to dictionaries.'"  *Arocho v. Cal. Fair Plan Ins. Co.*, 134 Cal. App. 4th 461, 466 (2005) (citation omitted); *see also Reynolds v. Philip Morris USA, Inc.*, 332 F. App'x. 397 (9th Cir. 2009) (using dictionary definition to find proofs of purchase on cigarette packs were not "gift certificates" under California gift certificate law).  The dictionary defines a "gift certificate" as "a certificate, ***usually presented as a gift***, that entitles the recipient to select merchandise ***of an indicated cash value*** at a commercial establishment."  American Heritage Dictionary of the English Language at 742 (4th ed. 2000) (emphasis added).  This conforms to the definition the Legislative Counsel of California provided to the sponsor of the gift certificate law:

> Although section 1749.5 does not define the term "gift certificate" we think in common usage the term refers to ***a certificate*** purchased ***by a consumer*** from a retailer, ***to be given as a gift***, that entitles the recipient of that gift to select goods or services ***in the amount stated thereon***.

Request for Judicial Notice ("RJN") Ex. C (AB 2466, Legislative Counsel's Report at 2 (January 17, 1997) (emphasis added)).  Legislative Counsel opinions are "entitled to great weight" and "particularly compelling."  *Cal. Ass'n of Psychology*

---

[6] The Amended Complaint alleges Civil Code § 1749.6(a) defines "gift certificate" when it states "[a] gift certificate constitutes value held in trust by the issuer of the gift certificate on behalf of the beneficiary, or to the legal representative of the beneficiary to the extent provided by law, and not to the issuer."  FAC ¶ 32.  But iStock knows of no court that has read Section 1749.6(a) as a definition.  Rather, Sections 1749.6(a) and (b) make clear an issuer holds the value of a gift certificate (however defined) in trust for a beneficiary.  As a result, for example, an issuer must continue to honor certificates (however defined) even if it is in bankruptcy.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Providers v. Rank*, 51 Cal. 3d 1, 16-17 (1990) ("In the absence of controlling authority, these opinions are persuasive").

Thus, the Ninth Circuit in *Reynolds* rejected the plaintiff's arguments that "Marlboro Miles," which purchasers of Marlboro cigarettes could keep and redeem for Marlboro products, were "gift certificates" under Cal. Civ. Code § 1749.5. "The little design on the cigarette pack that was to be cut out, saved, and eventually mailed in, is a proof of purchase, just like a cereal box top or an Ovaltine label. It is not a 'gift certificate' as the term would ordinarily be understood." 332 F. App'x at 398. The Ninth Circuit held the "ordinary meaning" of "gift certificates" requires they be "***typically given as gifts***" and "state … cash value." *Id.* (citing American Heritage Dictionary of the English Language 742 (4th ed. 2000)). The Court also looked to parts of Section 1749.5 referencing the "cash" and "face value" of a "gift certificate" to conclude a "gift certificate" must have a cash or face value.

The only California state court to consider this question adopted a similar interpretation, stating it was "clear" the California gift certificate law "contemplates a 'gift'; i.e., ***a certificate or card purchased or obtained by someone for the purpose of giving it to someone else***." *Waul v. Circuit City Stores, Inc.*, 2004 WL 1535825, at *3 (Cal. Ct. App. 2004) (emphasis added).[7] In *Waul*, Circuit City offered customers who made a qualifying purchase and signed up for three years of CompuServe a "merchandise card" for $400 worth of products at Circuit City. *Id.* at 2. The card was valid for 90 days. *Id.* The plaintiff argued the card was a "gift certificate." *Id.* The Court looked to the legislative history and concluded "Civil

---

[7] Although *Waul* is unpublished and not precedential, the Ninth Circuit has held the Court may consider the reasoning of unpublished California Court of Appeal decisions. *Jerry Beeman & Pharmacy Servs., Inc. v. Anthem Prescription Mgmt., LLC*, 652 F.3d 1085, 1093 (9th Cir. 2011) ("we are not precluded from considering these unpublished decisions as a possible reflection of California law, although they have no precedential value"), *vacated on other grounds*, 741 F.3d 29 (9th Cir. 2014); *Emp'rs Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n.8 (9th Cir. 2003) ("[W]e may consider unpublished state decisions, even though such opinions have no precedential value.").

NOTICE OF MOTION AND MOTION TO DISMISS
DWT 28117109v6 0053349-000111

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Code section 1749.5 was enacted to address a specific problem:  the practice of refusing to honor gift certificates that had expired." *Id*. at *3.  "The argument made in favor of the bill was that '[g]ift-givers do not expect their gifts to expire….  [E]xpired gift certificates dash the expectation of gift-givers and constitute an unfair windfall to retailers.' (Sen. Jud. Com., Analysis of Assem. Bill No. 2466, comment, p. 4.)."  *Id*. (footnote omitted).  *See also* RJN Ex. B.  Further, the Legislature designed the statute to "apply a unified law to all who issued gift certificates [that were not] subject to [a] settlement" of a lawsuit against eighteen large retailers— ranging from K Mart to Denny's—that agreed to add language to gift certificates stating they would honor certificates after expiration.  *Id*.; RJN Ex. A, (Assem. Com. on Banking and Finance, Analysis of Assem. Bill No. 2466 (1995-1996 Reg. Sess.) (Apr. 22, 1996.)).  In light of this background, *Waul* held the Circuit City "merchandise cards" were not "gift cards."  "Although a particular customer might choose to give the product or the card as a gift to someone else, the store does not provide the item or card for the purposes of gift-giving by the customer."  *Id*.[8]

Finally, the plain language of the California gift certificate statute makes clear it applies only to *tangible* certificates or cards (with fronts and backs), representing a sum of money a customer may use in lieu of cash to purchase goods and services from a retailer.  For example, the law does not apply to gift cards usable with multiple sellers so long as the expiration date "is printed *on the card*."  Cal. Civ. Code § 1749.45(a) (emphasis added).  It does not apply to certain gift certificates if an expiration date "appears in capital letters in at least 10-point font *on the front of*

---

[8] Other references in the legislative history support this interpretation.  *See, e.g.*, RJN Ex. D (Feb. 11, 1997 Letter from Legislative Counsel to Hon. Jan Goldsmith) (purpose of gift certificate law "is to protect *retail consumers* by imposing an obligation on merchants and other issuers to honor the certificates they have issued") (emphasis added) (citation omitted); RJN Ex. E (Sen. Jud. Comm., Analysis of Assemb. Bill No. 1092 (2003-2004 Session)) (June 16, 2003) ("*Usually promoted as an impulse purchase at checkout counters*, gift cards are redeemable in increments, and thus have become *popular gift items*….) (emphasis added) (regarding bill that added "gift card" to Cal. Civ. Code § 1749.45).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*the gift certificate*." Cal. Civ. Code. § 1749.5(d) (emphasis added). The law allows service fees when the "remaining value of the gift card is five dollars ($5) or less," necessarily implying a cash value to the card. *Id.* § 1749.5(e)(1). And it exempts gift cards with dormancy fees where "[a] statement is printed **on the gift card** in at least 10-point font stating the amount of the fee, how often the fee will occur, that the fee is triggered by inactivity of the gift card, and at what point the fee will be charged." *Id.* § 1749.5(e)(5) (emphasis added). Thus, the statute regulates physical "certificates" or "cards" with a stated cash value allowing the bearer to purchase goods and services—not Internet-based credits redeemable for photo licenses.

Under this authority, iStock credits are not "gift certificates." The Amended Complaint does not describe the purposes for which iStock licenses images or plaintiffs purchased credits. But the face of the Amended Complaint makes clear that iStock credits "are not typically given as gifts, are not certificates, and state no cash value"—just like the "Marlboro Miles" at issue in *Reynolds*. 332 F. App'x at 398. And just as in *Waul*, iStock does "not provide [credits] for the purposes of gift-giving by the customer." 2004 WL 1535825, at *3. Finally, nothing in the Amended Complaint suggests iStock's credits can be redeemed for "goods and services." *See* Civil Code § 1749.45 (referring to "goods and services"); RJN Ex. C (AB 2466, Legislative Counsel's Report at 2 (January 17, 1997)) (same). Plaintiffs' unlawful business practices claim fails as a matter of law because they have not stated a violation of the gift certificate statute.

### b.   The Amended Complaint Fails to Allege an Unfair Practice under the UCL.

Plaintiffs also allege the iStock expiration policy is an unfair practice under the UCL. *See* Cal. Bus. & Prof. Code § 17200. As to unfair practice claims, "California's unfair competition law, as it applies to consumer suits, is currently in flux." *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 735 (9th Cir. 2007). Courts traditionally applied a balancing test, in which they "weigh[ed] the utility of

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

the defendants' conduct against the gravity of the harm to the alleged victim." *Motors, Inc. v. Times Mirror Co.*, 102 Cal. App. 3d 735, 740 (1980).  But in *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163 (1999), the California Supreme Court rejected the balancing test in the context of a claim brought by a competing business, holding "any finding of unfairness… must be tethered to some legislatively declared policy."  *Id.* at 186.  Courts remain split whether *Cel-Tech* applies to consumer actions.  *Graham v. Bank of Am., N.A.*, 226 Cal. App. 4th 594, 612-13 (2014).  Some apply the pre-*Cel-Tech* test, others the *Cel-Tech* test itself, and still others a test under the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45(n).  *Id.*; *see also Schwartz v. U.S. Bank, N. A.*, 2012 WL 10423214, at *15 (C.D. Cal. 2012) (Morrow, J.) (plaintiff must satisfy FTCA test and show a practice "violates an established law or policy, or that it is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.").  No matter which test is applied, plaintiffs have not stated an "unfair" practice claim.

The Amended Complaint provides almost no explanation why the iStock expiration policy could be unfair.  Plaintiffs allege the "carrying cost of the electronic credit purchase was near nothing and thus there was little to no need to expire the credits after just one year" and that iStock "prohibited extending the expiration date even if the users planned to use more credits."  FAC ¶ 88.  This does not identify a legislatively declared (or any other) policy that iStock allegedly violated.  Nor does it explain why the expiration policy is "[u]nethical, oppressive, unscrupulous or substantially injurious to customers."  Plaintiffs do little more than "baldly state that the 'gravity of Defendant's alleged wrongful conduct outweighs any purported benefits attributable to such conduct.'"  *Marcus v. Apple Inc.*, 2015 WL 151489, at *4 (N.D. Cal. 2015) (dismissing UCL claim); *see also Watkinson v. MortgageIT, Inc.*, 2010 WL 2196083, at *7 (S.D. Cal. 2010) (plaintiff failed to allege claim under "unfair" prong where he alleged only that defendant "failed to provide disclosures that could be understood by Plaintiff"; court "c[ould not] conclude … actions

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

"offend[ed] an established public policy" or "[we]re 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'").

More important, plaintiffs do not allege being unaware they were buying credits that would expire after a year.  *Compare Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1137-38 (N.D. Cal. 2014) (plaintiff stated UCL "unfairness" claim where passenger car service allegedly misrepresented fee as "gratuity").  If the expiration terms were unacceptable, plaintiffs could have decided not to buy the credits—or taken steps to license stock images before expiration of the credits.  *See Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012) (rejecting UCL and FTCA claims based on annual credit card fee, where consumer could have avoided fee by closing account, even if doing so would negatively affect credit score).  Instead, because plaintiffs accepted the expiration terms, "any harm … suffered was the product of [their] own behavior," not iStock's.  *Id*. at 1170.

### c.     The Amended Complaint Fails to Allege a Claim under the FAL or the "Fraud" Prong of the UCL.

Plaintiffs allege two claims premised on iStock's allegedly false statements about its credit expiration policy—one under the "fraudulent" prong of the UCL, and the other under the FAL, which prohibits disseminating statements that are "untrue or misleading, and which [are] known, or which by the exercise of reasonable care should be known, to be untrue or misleading," Cal. Bus. & Prof. Code § 17500.  Both claims fail because plaintiffs do not identify the allegedly false statements on which they base their claims, much less allege they relied on those statements.

To state a claim under the UCL's "fraud" prong, a plaintiff must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the representations."  *Silcox v. State Farm Mut. Auto. Ins. Co.*, 2014 WL 7335741, at *4 (S.D. Cal. 2014) (dismissing UCL fraud claim where "it [was] unclear who made the representations, when the representations were made, and what the specific representations were that constituted fraudulent

18

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

activity"); *see also Gomez v. Wells Fargo Home Mortg.*, 2011 WL 5834949, at *12 (N.D. Cal. 2011) (plaintiffs failed to state claim under "fraudulent" prong of UCL because they "did not identify with particularity any specific fraudulent or misleading statements made by any particular Defendant"). Similarly, to allege a claim under the FAL, a plaintiff must "identify specific advertisements, when and where they were shown, and why they were untrue or misleading." *In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1093 (S.D. Cal. 2010); *see also J&J Sports Prods. Inc. v. Sally & Henry's Doghouse LLC*, 2015 WL 4714975, at *10 (S.D. Cal. 2015) (dismissing FAL claim where complaint failed "to identify any specific advertisements and fail[ed] to allege when they were distributed or publicized").

The Amended Complaint does not come close to meeting this requirement. With respect to their UCL fraud claim, plaintiffs allege iStock "disseminat[ed] through its website and other promotional channels, misleading and partial statements … that have a tendency to mislead the public," in particular by omitting "material information about the credits with the intent to induce reliance by purchasers to purchase said credits." FAC ¶ 74. But they do not identify ***any*** particular statements or omissions. Similarly, for their FAL claim, plaintiffs allege iStock "uses its website and other promotions, along with other social media to extensively market … the credits with misleading and illegal expiration dates and other deceptive terms." *Id.* ¶ 79. But plaintiffs do not identify what statements they claim are misleading, when or where they appeared, or why they are misleading. For this reason alone, the UCL fraud and FAL claims fail as a matter of law.

Elsewhere, the Amended Complaint identifies one allegedly false statement—i.e., that "credits never expire," which iStock allegedly made upon instituting a revised credit policy in or about December 2014. FAC ¶ 4. But plaintiffs do not identify where iStock allegedly made this statement, or where (or whether) either plaintiff saw it. More important, they could not plausibly allege they relied on the

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

statement because, as they admit, they bought the last of their credits in 2012, more than *two years* before the alleged misrepresentation.  *See* FAC ¶ 9 (alleging Ms. Sandler made purchases in 2009 and 2011); ¶ 11 (alleging Mr. Ahmed made a purchase in April 2012).  But "to assert a claim under the UCL or FAL, a person must have 'suffered injury in fact and ha[ve] lost money or property as a result of such unfair competition.' Cal. Bus. & Prof. Code §§ 17204, 17535."  *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1111 (S.D. Cal. 2011).  Thus, courts dismiss claims where, as here, a plaintiff sues based on alleged misrepresentations but fails to allege reliance on those misrepresentations.  *Id.* at 1112; *see also McCrary v. Elations Co., LLC*, 2013 WL 6403073, at *8 (C.D. Cal. 2013) (dismissing UCL and FAL claims based on statements on website where complaint failed to "allege [plaintiff] looked at or relied on anything on Defendant's website before purchasing" product); *Jenkins v. JP Morgan Chase Bank, N.A*, 216 Cal. App. 4th 497, 523 (2013) (dismissing claim where alleged harm occurred before allegedly unlawful acts).

Thus, even as to the one statement plaintiffs allege is false, both claims fail because they could not possibly have relied on it.  The Court should dismiss the claims with prejudice.  *Jenkins*, 216 Cal. App. 4th at 523 ("Amending the SAC to plead the previously asserted wrongful acts with more specificity will not change the fact these purported actions occurred after" the plaintiff suffered any alleged harm).

### d.     Plaintiffs Have Failed to State a Claim for Unjust Enrichment.

California courts "appear to be split on whether unjust enrichment can be an independent claim or merely an equitable remedy."  *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1099 (N.D. Cal. 2007).  This Court has held that "a cause of action for unjust enrichment is not cognizable."  *In re ConAgra Foods Inc.*, 908 F. Supp. 2d 1090, 1114 (C.D. Cal. 2012) (Morrow, J.).  Thus, the Court should dismiss the independent claim for unjust enrichment on that basis.

But even if plaintiffs theoretically *could* assert an unjust enrichment claim,

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

they fail to allege iStock's enrichment was "unjust," as the law uses that term. "[T]he fact that one person benefits another is not, by itself, sufficient to require restitution. The person receiving the benefit is required to make restitution only if the circumstances are such that, as between the two individuals, it is unjust for the person to retain it." *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010).  In particular, "[t]here is no equitable reason for invoking restitution when the plaintiff gets the exchange which he expected."  *Id.* at 1371.  Thus, in *St. James v. Equilon Enterprises, LLC*, 2008 WL 4279415, at *5 (S.D. Cal. 2008), the court dismissed an unjust enrichment claim where a contract governed parties' transaction because unjust enrichment "does not operate to rescue a party from the consequences of a bad bargain."[9] *See also, e.g.*, *Johnson v. Mitsubishi Digital Elecs. Am., Inc.*, 578 F. Supp. 2d 1229, 1241 (C.D. Cal. 2008) (no unjust enrichment claim based on customer's purchase of television allegedly lacking features advertised where customer did not allege he saw advertising; defendant "did not receive that money unjustly" and customer "got the television he wanted"), *aff'd*, 365 F. App'x 830 (9th Cir. 2010).

Here, although plaintiffs allege they conferred a benefit on iStock (by making payments), they fail to allege iStock's retention of that benefit is unjust.  In fact, the Amended Complaint makes clear plaintiffs got what they paid for: credits they could apply towards licenses of iStock images for up to a year from the date the credits were purchased.  The Court should therefore dismiss their unjust enrichment claim.

---

[9] *St. James* reflects the principle that an unjust enrichment claim "does not lie when an enforceable, binding agreement exists defining the rights of the parties." *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996); *see also Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*, 94 Cal. App. 4th 151, 172-73, 114 Cal. Rptr. 2d 109 (2001) ("a court cannot—not even under the guise of equity jurisprudence—substitute the court's own concepts of fairness regarding that subject in place of the parties' own contract"). The Amended Complaint does not allege (nor could it) the absence of a contract governing plaintiffs' purchase of download credits.  *See* Griffith Decl. Exs. B, C.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## B. The Court Should Dismiss under the Doctrine of Forum Non Conveniens.

The Court also should dismiss because plaintiffs filed their lawsuit in the wrong forum.  When they joined iStock as members, plaintiffs agreed "any claims or disputes … arising [under their agreements] shall be submitted to the exclusive jurisdiction and venue of the courts of the Province of Alberta."  Griffith Decl. Exs. B, C at 5.[10]  Plaintiffs failed to abide by this agreement.

Forum-selection clauses are "an indispensable element" in commerce, allowing parties to "agree[] in advance on a forum acceptable" to them.  *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 13–14 (1972).  This has "the salutary effect of dispelling any confusion about where suits arising from the contract must be brought and defended, sparing litigants the time and expense of pretrial motions to determine the correct forum and conserving judicial resources that otherwise would be devoted to deciding those motions."  *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593–94 (1991).  To protect the expectations of the parties, "a valid forum-selection clause should be given ***controlling weight in all but the most exceptional cases***."  *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 134 S. Ct. 568, 581 (2013) (emphasis added).  Where parties have agreed to a forum-selection clause, a "plaintiff's choice of forum merits ***no weight***," and the Court "should not consider arguments about the parties' private interests."  *Id.* at 581-82 (emphasis added).  "[T]he Supreme Court in *Atlantic Marine* explained that an enforceable forum-selection clause carries near-determinative weight."  *GDG Acquisitions, LLC v. Gov't of Belize*, 749 F.3d 1024, 1028 (11th Cir. 2014).

It makes no difference that plaintiffs agreed to litigate in Canada instead of the

_____

[10] In deciding whether to enforce iStock's forum-selection clause, the Court may "consider facts outside of the pleadings."  *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996); *see also U.S. Vestor, LCC v. Biodata Info. Tech. AG*, 290 F. Supp. 2d 1057, 1062 n.1 (N.D. Cal. 2003) (in deciding forum non conveniens motion, "[a] court may accept declarations outside the pleadings").

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

United States.  "[T]here is 'no basis for a judgment that only ... United States courts should determine this controversy in the face of a solemn agreement between parties that such controversies be resolved elsewhere.'"  *Richards v. Lloyd's of London*, 135 F.3d 1289, 1295 (9th Cir. 1998) (citation omitted) (enforcing clause selecting England as forum for resolving disputes over underwriting agreements).  Where, as here, a party "conducts a business that, by its nature, exposes it to potential litigation in different fora from plaintiffs from many locales," that party "ha[s] a special interest in limiting the fora in which [it] might defend suit."  *Brooks v. Sotheby's*, 2013 WL 3339356, at *5 (N.D. Cal. 2013) (enforcing clause selecting England as forum as to claims against auction house arising from purchase of art allegedly stolen by Nazis); *see also Spradlin v. Lear Siegler Mgmt. Servs. Co.*, 926 F.2d 865, 868-69 (9th Cir. 1991) (clause in employment agreement selecting Saudi Arabia forum did not deprive plaintiff of his day in court, even though Saudi Arabia has a significantly different judicial system).

Under *Atlantic Marine*, this Court should enforce the forum selection clause unless plaintiffs show (1) public interest factors militate against dismissal, or (2) the clause itself "violates fundamental fairness or is the result of fraud or overreaching." *Brooks*, 2013 WL 3339356, at *2 (analyzing factors under *Bremen*, 407 U.S. at 15); *Atl. Marine*, 134 S. Ct. at 581 n.6.  Plaintiffs can demonstrate neither.

*Public Interest.*  Public interest factors will "rarely defeat" a forum-selection clause.  *Atl. Marine*, 134 S. Ct. at 582.  "[T]he practical result is that forum-selection clauses ***should control except in unusual cases***." *Id.*  (emphasis added).  Public-interest factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Atl. Marine*, 134 S. Ct. at 581 n.6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).  None of the public interest factors render this case so "unusual" the Court should decline to enforce the forum-selection clause:

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

- Although California has an interest because plaintiffs live here, that interest is slight given that Plaintiffs chose to buy credits entitling them to obtain licenses offered by a company in Alberta, Canada, which does business worldwide. Even if this factor weighed against dismissal, plaintiffs could still not carry their "heavy burden to show that these are 'extraordinary circumstances unrelated to the convenience of the parties' that would warrant denial of the forum non conveniens motion." *Monastiero v. appMobi, Inc*., 2014 WL 1991564, at *4-5 (N.D. Cal. 2014) (quoting *Atl. Marine*, 134 S. Ct. at 581) (enforcing forum-selection clause despite California's interest in protecting rights of California residents).

- "[T]here is no reason to conclude the courts are significantly more congested … in Canada." *Chateau des Charmes Wines Ltd. v. Sabate USA, Inc.*, 2003 WL 22682483, at *8 (N.D. Cal. 2003); *see also Gund v. Philbrook's Boatyard*, 374 F. Supp. 2d 909, 914 (W.D. Wash. 2005) (same).

- This Court's familiarity with California law does not rebut the presumption favoring enforcement of the forum-selection clause, particularly where (as here) dismissal would be proper even under California law. *See Russell v. De Los Suenos*, 2014 WL 1028882, at *5 (S.D. Cal. 2014) (enforcing Mexico forum-selection clause; "even if California law would apply … dismissal would be appropriate").

**Fundamental Fairness.**  Nor can plaintiffs show the forum-selection clause to which they agreed violates fundamental fairness principles.  Under *Bremen*, a forum-selection clause is "prima facie valid and should not be set aside unless the party challenging enforcement of such a provision can show it is 'unreasonable' under the circumstances." *Argueta*, 87 F.3d at 324-25 (citing *Bremen*, 407 U.S. at 10).  Courts construe this exception "narrowly." *Id.*  "To establish unreasonableness of a forum selection clause," the party challenging it bears "a heavy burden of showing that trial in the chosen forum would be so difficult and inconvenient that the party effectively ***would be denied a meaningful day in court***." *Pelleport Investors, Inc. v. Budco*

24

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Quality Theatres, Inc.*, 741 F.2d 273, 281 (9th Cir. 1984) (emphasis added).

Plaintiffs cannot meet this burden, as they may meaningfully litigate their claims in Alberta, a venue closer to them than many alternative fora in the United States, such as New York. *See, e.g.*, *LP Digital Solutions v. Signifi Solutions, Inc.*, 921 F. Supp. 2d 997, 1008 (C.D. Cal. 2013) ("While the burden for plaintiff of litigating in Canada will no doubt be greater than the burden of litigating in California, this alone does not support a finding that plaintiff will be effectively deprived of its day in court."); *Rowen v. Soundview Commc'ns, Inc.*, 2015 WL 899294, at *5 (N.D. Cal. 2015) (rejecting claim California's interest in enforcing its own law rendered Georgia forum-selection clause unreasonable because "choice-of-law analysis is irrelevant to determining if the enforcement of a forum selection clause contravenes a strong public policy").

The iStock forum-selection clause is enforceable, and the Court should dismiss the Amended Complaint under the doctrine of forum non conveniens.

## IV.   CONCLUSION

For these reasons, iStock respectfully asks the Court to dismiss the Amended Complaint with prejudice.

DATED: November 2, 2015          DAVIS WRIGHT TREMAINE LLP


By:_____ */s/ Mary H. Haas*_____
        Mary H. Haas
        Stephen M. Rummage
        Ambika K. Doran
      Attorneys for iStockphoto LP

NOTICE OF MOTION AND MOTION TO DISMISS
DWT 28117109v6 0053349-000111

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899