BRANDON C. FERNALD (SBN 222429)
brandon.fernald@fernaldlawgroup.com
FERNALD LAW GROUP LLP
510 W. 6th Street, Suite 700
Los Angeles, CA 90014
Tel:   323-410-0320
Fax:   323-410-0330

Attorneys for Plaintiffs
LISA SANDLER, ASIF AHMED and PROPOSED CLASS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA SANDLER, an individual, ASIF AHMED, an individual, and others similarly situated,<br><br>            Plaintiffs,<br><br>      v.<br><br>ISTOCKPHOTO LP, a Canadian corporation; and DOES 1-10, inclusive,<br><br>            Defendants. | Case No.  2:15-cv-03659-MMM-JEM<br><br>**OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>**[DECLARATIONS OF LISA SANDLER; ASIF AHMED; BRANDON C. FERNALD; REQUEST FOR JUDICIAL NOTICE]**<br><br>**Time: 10:00am**<br>**Date: February 8, 2016**<br>**Ctrm: 780** |

DOCUMENT PREPARED
ON RECYCLED PAPER

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

I.    DEFENDANT'S CREDITS FALL WITHIN THE PURVIEW OF CIVIL
CODE § 1749.5 ...................................................................................... - 3 -

   A.   The California Statute Has No Intent Requirement. ................................ - 3 -

   B.   The California Statute Is Not Limited To Physical Gift Cards. ................ - 6 -

II.   DEFENDANT'S CREDITS FALL WITHIN THE PURVIEW OF THE
FEDERAL CARD ACT. ...................................................................... - 7 -

   A.   Defendant Improperly Seeks A Factual Determination In Its 12(B)(6)
Motion........................................................................................................... - 7 -

   B.   The Card Act Does Not Exempt Licenses................................................ - 9 -

III.  THE CONDUCT AT ISSUE FALLS WITHIN THE PURVIEW OF
BUSINESS & PROFESSIONS CODE § 17200 .................................... - 10 -

   A.   The Policy At Issue Is Both Unlawful And Unfair. ............................... - 10 -

   B.   The Conduct At Issue Is Fraudulent Within The Meaning Of §17200... - 13 -

   C.   Plaintiffs' Claimed §17200 Violations Are Timely. ............................. - 14 -

IV.   PLAINTIFFS' CAUSE OF ACTION FOR UNJUST ENRICHMENT IS
PROPERLY PLED. ........................................................................... - 15 -

V.    THE SUIT IS BROUGHT IN THE PROPER FORUM. ........................... - 15 -

   A.   Istockphoto Failed To Present Evidence That Either Plaintiff Agreed To The
Membership Agreement ........................................................................ - 16 -

   B.   The Forum Selection Clause Is Invalid ................................................ - 18 -

     1.   The Canada forum selection clause is unconscionable ...................... - 18 -

     2.   The Canada forum selection clause is unreasonable, violates strong public
policy, and would deprive plaintiffs of their day in court ......................... - 21 -

     3.   Atl. Marine does not apply when the forum is a foreign country. ...... - 23 -

     4.   Even if Atl. Marine is germane, enforcement of the forum selection
clause under the facts of this case is unreasonable and inappropriate ........ - 24 -

i

# TABLE OF AUTHORITIES

## CASES

24 Hour Fitness, Inc. v. Superior Court,
66 Cal.App.4th 1199, 1213 (1998) ..................................................... - 21 -

Advent Sys. v. Unisys Corp.,
925 F.2d 670, 675-676 (3d Cir. 1990) .................................................. - 9 -

America Online Inc. v. Superior Court,
90 Cal. App. 4th 1 (2001) .................................................................. - 22 -

Aral v. EarthLink, Inc.,
134 Cal.App.4th 544, 557 (2005) ........................................... - 19 -, - 21 -

Armendariz v. Foundation Health Psychcare Services, Inc.,
24 Cal.4th 83, 114 (2000) ................................................................. - 19 -

AT&T Mobility LLC v. Concepcion,
563 U.S. 333, 131 S.Ct. 1740, 1746 (2011) ...................................... - 18 -

Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.,
134 S. Ct. 568 (2013) ....................................................................... passim

Balistreri v. Pacifica Police Dep't,
901 F.2d 696, 699 (9th Cir. 1988) ....................................................... - 2 -

Beaver v. Tarsadia Hotels,
29 F.Supp.3d 1294, 1306 (S.D. Cal. 2014) ....................................... - 14 -

Blakemore v. Superior Ct.,
129 Cal.App.4th 36, 49, 27 Cal.Rptr.3d 877 (2005) ......................... - 13 -

Bolter v. Superior Court,
87 Cal.App.4th 900, 908 (2001) ....................................................... - 20 -

Cahill v. Liberty Mutual Ins. Co.,
80 F.3d 336, 337-38 (9th Cir. 1996) .................................................... - 2 -

ii

DOCUMENT PREPARED
ON RECYCLED PAPER

Collins v. eMachines, Inc.,

202 Cal.App.4th 249, 258, 134 Cal.Rptr.3d 588, 596 (2011) ............................ - 13 -

Committee on Children's Television, Inc. v. General Foods Corp.,

35 Cal.3d 197, 197 Cal.Rptr. 783 ............................................................ - 12 -, - 13 -

Communities for a Better Env't v. State Water Res. Control Bd.,

132 Cal.App.4th 1313, 1334, 34 Cal.Rptr.3d 396, 409 (2005) ............................ - 5 -

Fitz v. NCR Corp.,

118 Cal.App.4th 702, 723 (2004) ....................................................................... - 21 -

Frango Grille USA, Inc. v. Pepe's Franchising Ltd.,

2014 WL 7892164 *3 (C.D. Cal. July 21, 2014) ................................................ - 18 -

Gatton v. T-Mobile USA, Inc.,

152 Cal.App.4th 571, 579, 61 Cal.Rptr.3d 344 (2008) ...................................... - 11 -

Hahn v. Massage Envy Franchising, LLC,

2014 U.S. Dist. LEXIS 147899, 2014 WL 5100220 (S.D. Cal. Sept. 25, 2014)- 10 -,
- 11 -, - 12 -

Hal Roach Studios, Inc. v. Richard Feiner & Co.,

896 F.2d 1542, 1555 n. 19 (9th Cir. 1990) ......................................................... - 8 -

Harper v. Ultimo,

113 Cal.App.4th 1402, 1407 (2003) .................................................................. - 20 -

Hughes v. Corepower Yoga, LLC,

2013 U.S. Dist. LEXIS 44127, 2013 WL 1314456 (D. Minn. March 28, 2013).. - 8 -

In re ConAgra Foods, Inc.,

908 F. Supp.2d 1090, 1114 (C.D. Cal. 2012) ..................................................... - 15 -

J.B.B. Inv. Partners, Ltd. v. Fair,

232 Cal.App.4th 974, 987, 182 Cal.Rptr.3d 154 (2014) ...................................... - 6 -

Jones v. GNC Franchising, Inc.,

211 F.3d 495, 498-99 (9th Cir. 2000) ................................................................ - 23 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DOCUMENT PREPARED
ON RECYCLED PAPER

iii

Lhotka v. Geographic Expeditions, Inc.,

181 Cal.App.4th 816, 821, 104 Cal.Rptr.3d 844)................................................. - 11 -

Little v. Auto Stiegler, Inc.

(2003) 29 Cal.4th 1064, 1071, cert. denied, 540 U.S. 818, 124 S.Ct. 83 (2003) - 20 -

Little v. Auto Stiegler, Inc.,

29; Cal.4th 1064, 1071 (2003)................................................................... - 18 -

Livingsocial Mktg. & Sales Practice Litig.,

298 F.R.D. 1 (D.D.C. 2013) .................................................................. - 7 -

M/S Bremen v. Zapata Off-Shore Co.,

407 U.S. 1 (1972).................................................................................passim

Madison Boardwalk, LLC v. Omega Commercial Fin. Corp.,

No. 13-CV-288-BBC, 2013 WL 5966175, at *1 (W.D. Wis. Nov. 8, 2013)...... - 17 -

Martinez v. Bloomberg LP,

740 F.3d 211, 229-230 (2nd Cir. 2014).................................................. - 16 -, - 23 -

Merkin v. Vonage Am. Inc.,

No. 13–08026, 2014 WL 457942, at *6 (C.D. Cal. Feb. 3, 2014) ..................... - 20 -

Mier v. Owens,

57 F.3d 747, 750 (9th Cir. 1995) .......................................................... - 2 -

O'Donovan v. Cashcall,

2012 U.S. Dist. LEXIS 91549, 2012 WL 2568174 (N.D. Cal. July 2, 2012)..- 13 -, - 14 -

Pardee Construction Co. v. Superior Court,

100 Cal.App.4th 1081, 1088 (2002) ................................................... - 19 -

Pastoria v. Nationwide Incs.,

112 Cal.App.4th 1490, 1499, 6 Cal.Rptr.3d 148 (2003) .................................... - 13 -

People ex rel. Bill Lockyer v. Fremont Life Ins. Co.,

104 Cal.App.4th 508, 516, 128 Cal.Rptr.2d 463, 470 (2002) .......................... - 13 -

DOCUMENT PREPARED
ON RECYCLED PAPER

*People ex rel. Harris v. Pac Anchor Transp., Inc.*,
195 Cal.App.4th 765, 773 (2011) ........................................................................ - 10 -

*People v. Bestline Products, Inc.*,
61 Cal.App.3d 879, 915, 132 Cal.Rptr. 767 (1976) .............................................. - 13 -

*People v. McKale*,
25 Cal.3d 626, 634-637, 159 Cal.Rptr. 811) ......................................................... - 13 -

*Perdue v. Crocker National Bank*,
38 Cal.3d 913, 925 (1985) ...................................................................................... - 18 -

*Petersen v. Boeing Co.*,
715 F.3d 276, 281 (9th Cir. 2013) ......................................................................... - 23 -

*Pinel v. Aurora Loan Servs., LLC*,
814 F.Supp.2d 930, 936 (N.D. Cal. 2011) ............................................................ - 10 -

*Pokorny v. Quixtar, Inc.*,
601 F.3d 987, 996 (9th Cir. 2010) ......................................................................... - 19 -

*Reynolds v. Philip Morris USA, Inc.*,
332 Fed.Appx. 397 (9th Cir. 2009) ......................................................................... - 5 -

*Richards v. Lloyd's of London*,
135 F.3d 1289, 1293 (9th Cir. 1998) ...................................................................... - 22 -

*RRX Indus., Inc. v. Lab-Con, Inc.*,
772 F.2d 543 (9th Cir. 1985) ................................................................................... - 9 -

*Russel v. De Los Suenos*,
No. 13–CV–2081–BEN (DHB), 2014 WL 1028882, at *6 (S.D. Cal. Mar. 17, 2014)
..................................................................................................... - 18 -, - 25 -

*Samura v. Kaiser Foundation Health Plan, Inc.*,
17 Cal.App.4th 1284, 1299, fn. 6, 22 Cal.Rptr.2d 20 (1993)............................... - 12 -

*Sanchez v. Valencia Holding Co., LLC*,
61 Cal.4th 899, 915 (2015)..................................................................................... - 20 -

DOCUMENT PREPARED
ON RECYCLED PAPER

v

Shelton v. Restaurant.com, Inc.,
   214 N.J. 419, 70 A.3d 544 (2012) ........................................................ - 6 -

Silvas v. E*Trade Mortg. Corp.,
   514 F.3d 1001 (9th Cir. 2008) ............................................................ - 14 -

Sonic–Calabasas A, Inc. v. Moreno, (Sonic II),
   57 Cal.4th 1109, 1133 (2013) ............................................................. - 18 -

Starbucks Corp. v. Superior Court,
   168 Cal.App.4th 1436, 1449, 86 Cal.Rptr.3d 482, 492 (2008) ............................ - 4 -

State Farm Fire & Casualty Co. v. Superior Court,
   45 Cal.App.4th 1093, 1103, 53 Cal.Rptr.2d 229 (1996) .................................... - 12 -

Stirlen v. Supercuts, Inc.,
   51 Cal.App.4th 1519, 1532 (1997) ....................................................... - 18 -

Ting v. AT&T,
   319 F.3d 1126, 1148 (9th Cir. 2003) .................................................... - 19 -

Van Slyke v. Capital One Bank,
   503 F.Supp.2d 1353 (N.D. Cal. 2007) ................................................... - 21 -

Waul v. Circuit City Stores,
   2004 Cal.App.Unpub. LEXIS 6391, Case No. A101414/A101792 (2004) .......... - 5 -

Wilder v. JPMorgan Chase Bank, N.A.,
   2009 U.S. Dist. LEXIS 124242 (C.D. Cal. Nov. 25, 2009) .............................. - 15 -

### STATUTES

12 U.S.C. § 1464 ................................................................... - 14 -

Cal Civ. Code § 1749.6(a) ........................................................ - 3 -

Cal. Civ. Code § 1633.6 ........................................................... - 6 -

Cal. Civ. Code § 1670.5(a) ....................................................... - 18 -

California Business & Professions Code § 17200 ................................ - 2 -

California Civil Code § 1670.5 .................................................... - 10 -

DOCUMENT PREPARED
ON RECYCLED PAPER

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Civil Code § 1442 ....................................................................................... - 12 -

Civil Code § 1749.5(b)(2) .............................................................................. - 3 -

**TREATISES**

8 Williston on Contracts (4th ed. 2010) § 18.10, p. 91 ...................................... - 19 -

DOCUMENT PREPARED
ON RECYCLED PAPER

**INTRODUCTION**

Plaintiffs Lisa Sandler and Asif Ahmed (collectively, "Plaintiffs") each purchased credits using a computer in California for the purpose of redeeming those credits for photographs offered on defendant iStockphoto LP's ("iStockphoto" or "Defendant") website, www.istockphoto.com. Unbeknownst to them (and countless others just like them), after just one year, any unused portion of the purchased credits was expired and confiscated by iStockphoto. Not only is such practice a violation of California's unfair competition law, Business & Professions Code §17200, *et seq*. ("UCL"), but runs headlong into California and federal "gift certificate" statutes designed to prohibit the inappropriate windfall the expiration of gift certificates after just one year Defendant attempts to exploit.

Seeking to avoid this inevitable result, iStockphoto, in its Motion, tries to convince the Court that its credit packs do not fit within these laws at all. Relying on narrow and strained readings of the statutes, iStockphoto argues, among other things, that gift certificate laws only apply if the credit purchased is in physical form or is for use as a gift. No such limitations are found anywhere in the statutes and in fact, run contrary to the reason these laws were passed in the first place—avoiding unfair windfalls to sellers/retailers. Consumer protection laws like the UCL and gift certificate laws are to be read broadly and not narrowly as iStockphoto argues.

Tellingly, applying the laws in the manner proffered by iStockphoto demonstrates the absurdity of its reading of the statutes. Taking iStockphoto's arguments at face value, a Best Buy purchase card is not a gift certificate within the meaning of the California statute unless the purchaser intends to give the card as a gift. Similarly, a physical Amazon.com purchase card obtained at Vons falls within the purview of the statute, while an electronic Amazon.com purchase credit does not. These arguments and others like them do not reflect the intent of the statute which

DOCUMENT PREPARED
ON RECYCLED PAPER

was to prevent retailers such as Defendant from reaping a windfall through the use of expiration dates.

Irrespective of the applicability of the California and federal gift card statutes, Defendant's credit forfeiture policy is still actionable as it is unfair and unconscionable under California law and therefore an unlawful and unfair practice under the UCL.  The credit forfeiture policy is also fraudulent and in violation of UCL § 17200 as the 1 year expiration deadline is not disclosed during the credit purchase transaction.  Only by checking hyperlinked FAQs at the bottom of the page would a user learn that the credits would expire after just 1 year.

Finally, this lawsuit is properly venued in Los Angeles, California, where the named Plaintiffs reside, and in the state where the class they seek to represent resides. It would be grossly unreasonable and unfair to force Plaintiffs and the proposed class to travel to Alberta, Canada to attempt to assert their respective legal rights.

Defendant's Motion to Dismiss should be denied, and Plaintiffs should be permitted to pursue their claims in their residence of Los Angeles, California.

## APPLICABLE STANDARD OF REVIEW

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint.  A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory," or "the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).  The court must accept all factual allegations pleaded in the complaint as true, and construe them and draw all reasonable inferences from them in favor of the nonmoving party.  Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996); Mier v. Owens, 57 F.3d 747, 750 (9th Cir. 1995).

## ARGUMENT

DOCUMENT PREPARED
ON RECYCLED PAPER

## I.   DEFENDANT'S CREDITS FALL WITHIN THE PURVIEW OF CIVIL CODE § 1749.5

iStockphoto makes two primary arguments in challenging the applicability of section 1749.5: (1) the act only applies to actual "gifts"; and (2) the act only applies to traditional plastic "gift cards."  Neither reflects a fair reading of the statute or the Legislative History underlying it.

### A.   The California Statute Has No Intent Requirement.

Assembly Bill number 2466, which ultimately became Civil Code section 1749.5, arose as the result of the 1995 settlement of a class action lawsuit against eighteen of the nation's retailers for failing to honor expired gift certificates.  (Senate Judiciary Committee, Bill Analysis, Assembly Bill 2466 (1995-1996 Reg. Session), June 11, 1996 pp. 1-2.)  The bill was an attempt to apply unified law to all gift certificates.  Id.

Tellingly, however, the legislative history does not reflect a concern with the definition of "gift certificate," which not surprisingly does not appear in the final statute either, but rather a concern with the unfair concept the bill was designed to address: that retailers receive an "unfair windfall" every time a gift certificate expires. Id.  Per the statute: "[a] gift certificate constitutes value held in trust by the issuer of the gift certificate on behalf of the beneficiary of the gift certificate."  Cal Civ. Code § 1749.6(a).

When the Legislature revisited the statute 10 years later to add a cash redemption requirement, the concern was once again the windfall to retailers, this time from the low cash balances remaining on gift cards that more often than not went unused.  At the time, [a] retail trade organization estimated that gift card sales amounted to $82 billion in 2006, with 10% -- $8.2 billion of that lost to consumers due to unredeemed value on the cards, or expiration or loss of the gift card.  (Senate Judiciary Committee, Bill Analysis, Senate Bill 250, (2007-2008 Reg. Session), March 27, 2007 pp1-2).  In reaction to this inequity, in 2007, State Senator Ellen M.

DOCUMENT PREPARED
ON RECYCLED PAPER

1   Corbett authored Senate Bill 250, stating consumers with small values on their cards

2   may redeem them for their cash value.  Civil Code § 1749.5(b)(2).

3         In an effort to avoid application of the California statute, Defendant seeks to

4   impute an intent requirement—a gift certificate is only subject to the California

5   statute if purchased with the intent to give to another as a gift.  In essence, according

6   to iStockphoto, the holder of a voucher redeemable for something, be it a traditional

7   gift card or a credit as in this case, may not seek relief under § 1749.5 *unless* he or

8   she purchased the voucher with the intent to give it as a gift.  Such requirement is

9   nowhere found in the statute nor in the legislative history.  Further, such an

10  interpretation would severely limit the applicability of the statute and in many

11  respects result in an absurdity.

12        "It is a well-settled maxim of statutory construction that 'a statute is to be

13  construed in such a way as to render it "reasonable, fair and harmonious with [its]

14  manifest [legislative] purposes … ." [citations], and the literal meaning of its words

15  must give way to avoid harsh results and mischievous or absurd consequences.'"

16  Starbucks Corp. v. Superior Court, 168 Cal.App.4th 1436, 1449, 86 Cal.Rptr.3d 482,

17  492 (2008).  Here, iStockphoto's proposed intent requirement would mean that a $20

18  purchase voucher sold by Best Buy, for example, would be subject to the statute only

19  if the buyer intended to give the voucher as a gift, rather than keep it for him or

20  herself.  In the latter instance, the voucher would be exempt from the statute's

21  application according to Defendant, and useless if Best Buy attached an expiration

22  date to it that then passed.  Taking it further as required by Defendant's reading, if

23  that same certificate was then given to someone else, even a stranger, it would

24  suddenly be fully usable again for its full value, even if used years later.  Such an

25  absurd reading of the statute is not indicated in the legislative intent, which is focused

26  on avoiding a windfall to the retailer resulting from expired vouchers such as gift

27  cards and gift certificates.

28

- 4 -

This further comports with the enforcing agency's interpretation of the statute. According to the California Department of Consumer Affairs, you can give a gift card or gift certificate to a friend, or "purchase a gift card for yourself from a business you patronize regularly." FAQs and Tips on Gift Certificates and Gift Cards: Legal Guide S-11 (December 2010).[1] Either way, the purchase comes within the purview of the California statute.

As applied here, the credits at issue can be purchased for myriad reasons, including gift giving. The purchaser's specific intent with respect to his or her use of the credits is irrelevant. At issue is preventing a windfall to the retailer of the credit resulting from its expiration.

iStockphoto's citations to Waul v. Circuit City Stores, 2004 Cal.App.Unpub. LEXIS 6391, Case No. A101414/A101792 (2004) and Reynolds v. Philip Morris USA, Inc., 332 Fed.Appx. 397 (9th Cir. 2009) are not to the contrary. As the court noted in Waul, the merchandise cards at issue in the case "are not purchased or obtained as gifts." No windfall results to the retailer if its merchandise bonus cards expire. According to the court, "[w]e see no reason to assume that the Legislature intended Civil Code section 1749.5 to extend to a merchandise card distributed by a retailer to a customer as a kind of bonus offer for making a particular purchase merely because it might expire before the customer acted on the offer." Id. at *10-11. Reynolds similarly involved proofs of purchases utilized to obtain promotional items. The credits were not purchased from Phillip Morris. The credits' expiration resulted in no windfall to Phillip Morris.

To the contrary, here iStockphoto *sells* electronic credits with a set cash value that can later be redeemed for photographs of a set cash value. iStockphoto's use of

---

[1] "Generally, we extend considerable deference to an administrative agency's interpretation of its own regulations or the regulatory scheme which the agency implements or enforces. The agency interpretation is entitled to great weight unless unauthorized or clearly erroneous. Communities for a Better Env't v. State Water Res. Control Bd., 132 Cal.App.4th 1313, 1334, 34 Cal.Rptr.3d 396, 409 (2005).

DOCUMENT PREPARED
ON RECYCLED PAPER

1    expiration dates results in a windfall to itself, at the expense of the holder of the

2    credits.  This is exactly the type of conduct the California statute was intended to

3    address and prevent.

4           **B.      The California Statute Is Not Limited To Physical Gift Cards.**

5           Defendant's second argument is that the California statute is limited in

6    application to physical gift cards.  The decision of the Supreme Court of New Jersey

7    in <u>Shelton v. Restaurant.com, Inc.</u>, 214 N.J. 419, 70 A.3d 544 (2012) is instructive.

8    As here, the defendant in <u>Shelton</u> argued that its electronic coupons did not fall within

9    the purview of New Jersey's unfair competition statute.  The New Jersey Supreme

10   Court dismissed the argument out of hand, ruling that with New Jersey's adoption of

11   the Uniform Electronic Transactions Act ("UETA"), a transaction cannot be denied

12   legal effect simply because it is electronic.  *Id.* at 439.

13          In California the UETA became effective January 1, 2000.  <u>J.B.B. Inv.</u>

14   <u>Partners, Ltd. v. Fair</u>, 232 Cal.App.4th 974, 987, 182 Cal.Rptr.3d 154 (2014).  The

15   stated purpose of the UETA is "[t]o facilitate electronic transactions consistent with

16   other applicable law."  Cal. Civ. Code § 1633.6.

17          There is nothing in California's gift card statute that expressly limits its

18   application to physical gift cards.  Such a limitation further eviscerates the stated

19   intent of the statute which is to prevent retailers from obtaining a windfall via expired

20   gift certificates—the focus being on the expiration related windfall and not the form

21   of the certificate.

22          Further, such an interpretation would result, once again, in an absurdity.  To

23   follow Defendant's argument to its logical conclusion, the purchase of an electronic

24   credit for $50 worth of merchandise redeemable at Amazon.com would not be subject

25   to the California statute, but the purchase of a physical Amazon.com card from Vons

26   for $50 worth of merchandise redeemable at Amazon.com would.  This

27   differentiation fails to effectuate the purpose of the statute, which was to prevent

28

DOCUMENT PREPARED
ON RECYCLED PAPER

retailers and sellers like Amazon.com from receiving a windfall as a result of an expired purchase voucher, regardless of whether the credit came in the form of a physical card or electronic credit.[2]

## II.   DEFENDANT'S CREDITS FALL WITHIN THE PURVIEW OF THE FEDERAL CARD ACT.

With respect to the Federal CARD Act, iStockphoto's arguments are threefold: (1) the credits at issue are not purchased "primarily for personal, family or household purposes"; (2) the credits are not issued in a specified amount and are reloadable; and (3) the credits at issue are not redeemable for goods or services.

Before getting to iStockphoto's arguments, however, it should be noted that the Federal CARD Act, like the California Statute, does not impose an intent requirement, such that its application is limited to actual "gifts."  Indeed, the credits at issue here fall *squarely* within the federal definition of the term "gift certificate" which is defined to mean "an electronic promise that is (i) redeemable at a single merchant or an affiliated group of merchants that share the same name, mark or logo, (ii) issued in a specified amount that may not be increased or reloaded, (iii) purchased on a prepaid basis in exchange for payment, and (iv) honored upon presentation by such single merchant or affiliated group of merchants."  Here, tranches of credits are purchased from Defendant in specified amounts with cash, and are redeemable only by Defendant for photography or video.

Not surprisingly, Defendant focuses its federal arguments elsewhere.

### A.   iStockphoto Improperly Seeks A Factual Determination In Its 12(b)(6) Motion.

---

[2] It is noteworthy that electronic credits or vouchers similar to those at issue here have been the subject of several class action settlements involving state and federal gift card statutes.  See, e.g., In re Livingsocial Mktg. & Sales Practice Litig., 298 F.R.D. 1 (D.D.C. 2013); "Skype Lawsuit to Yield Credit for Customers", Wall Street Journal, January 14, 2010 (http://blogs.wsj.com/digits/2010/01/14/skype-lawsuit-to-yield-credit-for-customers)

DOCUMENT PREPARED ON RECYCLED PAPER

Defendant's first two arguments rely upon issues of fact not appropriate for decision on a motion to dismiss.  "Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion."  Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990) (citations omitted).

Defendant's Motion to Dismiss suggests that the credits purchased from its site are not "primarily for personal, family or household use" and that in fact the credits are not sold in a specific monetary amount and are reloadable.  Both arguments either rely upon facts outside of the four corners of the FAC and/or are directly contrary to the facts actually pled.  To the extent the Court desires further pleading on the purpose behind the credits purchased, Plaintiffs seek leave to amend on this issue.

Turning to the credits themselves, the FAC specifically alleges that:

> iStockphoto's credits and credit packs qualify as "gift certificates" under both the CARD Act and California Civil Code § 1749.5 as they (1) are an electronic promise redeemable at a single merchant; (2) are issued in specified amounts (new credit packs may be purchased but each pack is not reloadable and the expiration dates are applied separately to each individual credit pack purchase); (3) are purchased on a prepaid basis; and (4) are honored upon presentation to iStockphoto only.

> iStockphoto's credit pack model is not reloadable. Each purchase of credits is treated as an entirely new electronic promise wherein each credit pack purchase is subject to its own expiration date. In other words, once the credit pack purchase is made (which is in a specific amount), the clock on its expiration and according need for use begins to run. (FAC, ¶¶35-36.)

Defendant's factual argument that its credits are not for a specified value and are reloadable are no doubt intended to render this case analogous to the facts in Hughes v. Corepower Yoga, LLC, 2013 U.S. Dist. LEXIS 44127, 2013 WL 1314456 (D. Minn. March 28, 2013).  There is no analogy.  Hughes involved the defendant's sale of class packs redeemable for yoga classes.  The court reasoned that such were not gift certificates within the meaning of the Minnesota gift card statute or the Federal CARD Act, because instead of being redeemable for yoga classes of a

DOCUMENT PREPARED
ON RECYCLED PAPER

1    specified value, the gift certificates were simply redeemable for yoga classes,

2    regardless of the value of the classes.

3        Such is not the case here.  While the 'currency' utilized by Defendant is

4    "credits", said credits have a specific dollar value and must be purchased in

5    tranches—e.g., 3 credits for $33, etc.  These credits can then be utilized to purchase

6    licenses for photographs, videos and the like, each of which is assigned a specific

7    value in credits.  Thus, if a customer purchases 3 credits for $33, he or she can only

8    afford photographs or video sold for 3 credits or less.  If the price of certain licenses

9    increases—e.g., from 3 credits for a particular photograph to 6 credits—the customer

10   either cannot purchase the license, or must purchase an additional tranche of credits

11   in order to be able to afford it.  The mere fact that Defendant has converted the

12   currency utilized on its platform from dollars to credits does not serve to exempt it

13   from the California statute or the CARD Act.  The credit tranches represent a specific

14   monetary value that must be used to purchase licenses which are sold for a specific

15   monetary value.  Regardless, such involves a factual determination inappropriate for

16   a 12(b)(6) motion.

17   **B.**    **The CARD Act Does Not Exempt Licenses.**

18       There is nothing in the CARD Act that calls for Defendant's proposed narrow

19   interpretation of "goods or services" to exclude licenses for photographs.  Utilizing

20   the Amazon.com example above, under Defendant's proposed interpretation, an

21   Amazon.com $20 purchase voucher or credit would only be subject to the CARD Act

22   depending upon what it was utilized to purchase.  If the purchase was a license to

23   view a movie, the CARD Act would not apply.[3]

24

25

---

26   [3] Taken to the logical conclusion, is iStockphoto really arguing that an Amazon.com
     purchase voucher (bought at Vons for instance) used more than a year later, would

27   not be valid if the buyer tried to buy a DVD movie but would still be good if they
     bought a hair dryer?

28

DOCUMENT PREPARED
ON RECYCLED PAPER

By analogy, it has long been disputed whether a software license constitutes a "good," a "service" or merely intangible intellectual property.  Most courts and academic commentaries have considered software licenses to be "goods."  <u>See</u>, <u>e.g.</u>, <u>Advent Sys. v. Unisys Corp.</u>, 925 F.2d 670, 675-676 (3d Cir. 1990) (<u>citing</u> <u>RRX</u> <u>Indus., Inc. v. Lab-Con, Inc.</u>, 772 F.2d 543 (9th Cir. 1985)).

The CARD Act is not so limited.  A "good or service" within the meaning of the CARD Act includes tangible items as well as items such as electronic software, streaming video or photographs.

## III.  THE CONDUCT AT ISSUE FALLS WITHIN THE PURVIEW OF BUSINESS & PROFESSIONS CODE § 17200

### A.  The Policy At Issue Is Both Unlawful And Unfair.

"An 'unlawful' business practice or act within the meaning of the UCL 'is an act or practice, committed pursuant to business activity that is at the same time forbidden by law." <u>Pinel v. Aurora Loan Servs., LLC</u>, 814 F.Supp.2d 930, 936 (N.D. Cal. 2011) (<u>citing</u> <u>People ex rel. Harris v. Pac Anchor Transp., Inc.</u>, 195 Cal.App.4th 765, 773 (2011)).  "A business practice that is not unlawful may nonetheless be actionable as an 'unfair' business practice." <u>Id.</u> at 940.

A violation of the California gift card statute and/or the Federal CARD Act obviously gives rise to a cause of action under the UCL.  iStockphoto does not argue otherwise.  Defendant's focus is on whether its practices constitute a violation of the California or Federal gift card statutes in the first instance.  Defendant's focus is misplaced.

The UCL applies *irrespective* of the applicability of the California gift card statute and/or the Federal CARD Act.  A transaction that contains procedurally or substantively unconscionable terms is in violation of California Civil Code § 1670.5.  Such constitutes an unlawful and unfair act within the meaning of the UCL.  <u>See</u>, <u>e.g.</u>, <u>Pinel</u>, <u>supra</u>, 814 F.Supp.2d at 938.

DOCUMENT PREPARED
ON RECYCLED PAPER

The recent decision in <u>Hahn v. Massage Envy Franchising, LLC</u>, 2014 U.S. Dist. LEXIS 147899, 2014 WL 5100220 (S.D. Cal. Sept. 25, 2014) is uniquely analogous.  The case involved the defendant's membership plan, which provided for one massage per month in exchange for the $59 monthly membership fee.  The plaintiff had made 23 monthly membership payments thereby earning 23 massages, only two of which had been redeemed, when she decided to cancel her membership. Upon cancellation, the defendant revoked the 23 earned massage sessions.

The court in <u>Hahn</u> ruled that the policy at issue was procedurally unconscionable based on its findings that the membership agreement was a contract of adhesion and that customers were not adequately advised when they purchased a membership that earned massages would be cancelled upon membership cancellation.

In so ruling, the court further rejected the defendant's argument that procedural unconscionability could not be established because the plaintiffs had other market alternatives.  According to the court, "the availability of market alternatives for non-essential services mitigates the adhesive nature of consumer contracts, but does not eliminate it.  Adhesiveness, therefore, 'establishes a minimal degree of procedural unconscionability. . . .'"  <u>Id.</u> at *20-22 (citing <u>Lhotka v. Geographic Expeditions, Inc.</u>, 181 Cal.App.4th 816, 821, 104 Cal.Rptr.3d 844); <u>Gatton v. T-Mobile USA, Inc.</u>, 152 Cal.App.4th 571, 579, 61 Cal.Rptr.3d 344 (2008)).

The court in <u>Hahn</u> went on to find that the cancellation policy was also substantively unconscionable as it "negate[d] the reasonable expectation that the member will be able to redeem their already purchased massage services at a later time."  <u>Id.</u> at 27-28.  Factoring into the court's decision was the fact that the policy involved a forfeiture within the meaning of California Civil Code § 1442, lacked a business justification, and that the cancellation policy was not prominently disclosed at the time of purchase.  <u>Id.</u> at 26-28.

DOCUMENT PREPARED
ON RECYCLED PAPER

1    The policy at issue here is remarkably similar.  While Defendant argues that
2    "Plaintiffs tacitly concede they knew [about the 1 year expiration policy] when they
3    decided to buy the credits," (Motion, 1:8-9), there is no pleading to that effect.
4    Indeed, if permitted to amend, Plaintiffs would allege that they were unaware when
5    they purchased credits from Defendant that the credits were subject to a 1 year
6    expiration deadline, and indeed expected to be able to utilize the credits indefinitely.
7    While irrelevant for purposes of a motion to dismiss, it is nonetheless noteworthy
8    that the membership "terms and conditions" Defendant attaches to its motion say
9    nothing about the 1 year expiration policy.  As Defendant is well aware, its customers
10   were not required to agree to a 1 year forfeiture provision before purchasing credits
11   on its site.

12   As in Hahn, the policy at issue here results in a forfeiture.  Consumers pay
13   money to iStockphoto to obtain credits toward the purchase of photographs or videos.
14   If they fail to redeem the credits within one year, their money is forfeited.  As such,
15   in accordance with Civil Code § 1442, the policy must be strictly interpreted against
16   iStockphoto.

17   As further alleged in the FAC, the expiration policy has no legitimate business
18   purpose.  The cost of maintaining the electronic credits for users is negligible.  (FAC,
19   ¶ 39.)  In effect, the 1 year expiration model provides Defendant with the opportunity
20   to make significant revenue with no accompanying need to provide the stock photos
21   or videos to the customer with expired credits.  (FAC, ¶ 38.)

22   Accordingly, as in Hahn, the policy at issue here is procedurally and
23   substantively unconscionable and in violation of California Civil Code § 1670.5, and
24   as a result is also unlawful under the UCL.

25   For the same reason, the challenged policy is "unfair" within the meaning of
26   the UCL.  This prong is "intentionally broad, thus allowing courts maximum
27   discretion to prohibit new schemes to defraud. [Citation.]"  State Farm Fire &

28
- 12 -

Casualty Co. v. Superior Court, 45 Cal.App.4th 1093, 1103, 53 Cal.Rptr.2d 229 (1996).   The unfairness prong has been employed to enjoin deceptive or sharp practices.   Samura v. Kaiser Foundation Health Plan, Inc., 17 Cal.App.4th 1284, 1299, fn. 6, 22 Cal.Rptr.2d 20 (1993); see, e.g., Committee on Children's Television, Inc. v. General Foods Corp., 35 Cal.3d 197, 197 Cal.Rptr. 783 & People v. Bestline Products, Inc., 61 Cal.App.3d 879, 915, 132 Cal.Rptr. 767 (1976).   California courts have "determined that unfair business practices include unconscionable provisions in standardized agreements."   People ex rel. Bill Lockyer v. Fremont Life Ins. Co., 104 Cal.App.4th 508, 516, 128 Cal.Rptr.2d 463, 470 (2002) (citing People v. McKale, 25 Cal.3d 626, 634-637, 159 Cal.Rptr. 811).

**B.     The Conduct At Issue Is Fraudulent Within The Meaning Of §17200.**

Unlike common law fraud, a Business and Professions Code section 17200 violation can be shown even without allegations of actual deception, reasonable reliance and damage.   Historically, the term "fraudulent," as used in the UCL, has required only a showing that members of the public are likely to be deceived. Committee on Children's Television, Inc., supra, 35 Cal.3d at 211.

"'In order to be deceived, members of the public must have had an expectation or an assumption about' the matter in question."   Collins v. eMachines, Inc., 202 Cal.App.4th 249, 258, 134 Cal.Rptr.3d 588, 596 (2011); see also Blakemore v. Superior Ct., 129 Cal.App.4th 36, 49, 27 Cal.Rptr.3d 877 (2005) (finding Avon return policy fraudulent and unfair under UCL); Pastoria v. Nationwide Incs., 112 Cal.App.4th 1490, 1499, 6 Cal.Rptr.3d 148 (2003) (allegations that insurer did not notify purchases of insurance policies of impending material changes in policy benefits until after purchase was made was sufficient to state a 17200 claim for deception).   The expectation of Plaintiffs was that the credits purchased would be redeemable at any time and not subject to forfeiture within a year.   The forfeiture aspect of the purchase was not disclosed to customers at the time of purchase and is

DOCUMENT PREPARED
ON RECYCLED PAPER

1    obviously material to the purchase.  To the extent these facts were not adequately

2    alleged, Plaintiffs seek leave to amend.

3        **C.    Plaintiffs' Claimed § 17200 Violations Are Timely.**

4        Defendant relies solely on the decision in <u>O'Donovan v. Cashcall</u>, 2012 U.S.

5    Dist. LEXIS 91549, 2012 WL 2568174 (N.D. Cal. July 2, 2012) for the proposition

6    that the one year statute of limitations under the Federal CARD Act trumps the four

7    year statute of limitations under section 17200, where the UCL violation is premised

8    upon a violation of the CARD Act.

9        In a well-reasoned decision in <u>Beaver v. Tarsadia Hotels</u>, 29 F.Supp.3d 1294,

10   1306 (S.D. Cal. 2014), the court rejected the <u>O'Donovan</u> decision's reliance upon

11   <u>Silvas v. E*Trade Mortg. Corp.</u>, 514 F.3d 1001 (9th Cir. 2008), because <u>Silvas</u> turned

12   on field preemption under the Home Owners Loan Act of 1933 (12 U.S.C. § 1464).

13   Similarly, no such field preemption exists here nor does Defendant argue otherwise.

14       The court in <u>Beaver</u> addressed the issue with respect to the Land Sales Full

15   Disclosure Act ("ILSA") concluding that "Defendants have not provided compelling

16   authority for the Court to apply the shorter federal statute of limitations over the broad

17   statutory requirement of a four year UCL statute of limitations.   There is no

18   legislative authority that vests exclusive jurisdiction to the federal statute; no safe

19   harbor; and no preemption."  <u>Id.</u> at 1311.  In support of its conclusion, the court in

20   <u>Beaver</u> further noted that "in TILA cases, courts have held that differences between

21   federal and state statute of limitations do not result in conflict preemption because

22   the longer state statute of limitations provides an additional level of protection for

23   consumers and are not inconsistent with federal law."  <u>Id</u>. at 1309 (multiple citations

24   omitted).

25       Similarly, Defendant points to no authority, statutory or otherwise, that

26   suggests that Congress intended the provisions of 15 U.S.C. § 1694l-1 to preempt

27   state laws and regulations on the same subject matter.  Indeed, as with TILA, the fact

28

DOCUMENT PREPARED
ON RECYCLED PAPER

that California state law provides an additional level of protection for consumers in the way of a longer statute of limitation does not conflict with federal law in this area.

## IV.   PLAINTIFFS' CAUSE OF ACTION FOR UNJUST ENRICHMENT IS PROPERLY PLED.

iStockphoto's argument with respect to the unjust enrichment cause of action is twofold: (1) there is no such cause of action; and (2) even if there is such a cause of action, Plaintiffs received the benefit of their bargain.

Taking the second argument first, Defendant's conclusion assumes that Plaintiffs paid for credits with the expectation that they would lose the credits after one year.  Plaintiffs had no such expectation nor was such explained to them at the time of their purchase.  To the extent such needs to be alleged with greater particularity, Plaintiffs request leave to amend.  In short, the facts at issue here are the epitome of unjust enrichment—Defendant received a windfall through the expiration of unused credits Plaintiffs had purchased for cash.  Plaintiffs were denied the benefit of the bargain they thought they were making.

While Defendant is correct that *some* courts in the Central District have ruled that no cause of unjust enrichment exists in California, other courts in this district have ruled to the contrary.  Indeed, in the Court in Wilder v. JPMorgan Chase Bank, N.A., 2009 U.S. Dist. LEXIS 124242 (C.D. Cal. Nov. 25, 2009) found "that the weight of authority indicates that California law recognizes a cause of action for unjust enrichment/restitution."  In In re ConAgra Foods, Inc., 908 F. Supp.2d 1090, 1114 (C.D. Cal. 2012) this Court dismissed the unjust enrichment cause of action, recognizing that the pending UCL cause of action already provided for restitutionary recovery.  Should this Court in this case decide to dismiss the UCL claim, it should nonetheless permit Plaintiffs to proceed under an unjust enrichment cause of action.

## V.   THE SUIT IS BROUGHT IN THE PROPER FORUM.

iStockphoto challenges the California forum of this case—seeking to dismiss on the basis of forum non conveniens.  It bases this challenge entirely upon a Canada

DOCUMENT PREPARED
ON RECYCLED PAPER

forum selection clause found near the end of a "clickwrap" membership agreement it alleges all users of iStockphoto's website must agree to electronically in order to become a "member" with access to the photos its sells.  Relying exclusively upon this allegedly valid forum selection clause, iStockphoto forgoes conducting the traditional and normally mandatory forum non conveniens analysis needed to change forums as outlined in M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972).  The test under Bremen is a stringent one, requiring the balancing of public and private factors, which in the case of a California consumer buying stock photos using credits for relatively small amounts of money in California from an established company operating in California via website would not end favorably for iStockphoto.

iStockphoto seeks to avoid this inevitable result by relying on Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex., 134 S. Ct. 568 (2013) which allows for modification of the Bremen forum test in certain limited circumstances not applicable here.  The forum selection clause here is unconscionable, unreasonable, and contrary to strong public policy, and therefore invalid.  Reliance on Atl. Marine is therefore misplaced and the case inapposite.  iStockphoto also misses an important nuance to the holding of Atl. Marine: it only applies if the proposed transfer forum is another federal court, otherwise all the traditional Bremen factors are to be considered.  See Martinez v. Bloomberg LP, 740 F.3d 211, 229-230 (2nd Cir. 2014).[4] And even were Atl. Marine and its modified Bremen test germane, enforceability of the forum selection clause and transfer of forum under the facts of this case is still inappropriate and unreasonable.

### A.   iStockPhoto Failed to Present Evidence that Either Plaintiff Agreed to the Membership Agreement

---

[4] Recognizing that the Atl. Marine decision only directly addressed transfer from one federal district court to another based on a forum selection under 28 U.S.C. § 1404(a) and that "forum selection clauses pointing to foreign fora present distinct challenges not raised by clauses that merely point to other federal district courts [and thus all Bremen factors are to be considered]."  Id. at 229-230.

DOCUMENT PREPARED
ON RECYCLED PAPER

As a preliminary matter, iStockPhoto failed to present evidence that either Plaintiff agreed to a forum selection clause.  In support of its claim that the named Plaintiffs agreed to a membership agreement that included a forum selection clause choosing Alberta, Canada as the forum, iStockphoto submits the declaration of Joy Griffith, an employee of iStockphoto.  In her declaration, Ms. Griffith states that both Plaintiffs would have had to view and click a button agreeing to become an iStockphoto member before being able to purchase credits or a subscription for photos.  Griffith Decl., ¶¶ 7-9. She further states that Ms. Sandler signed up on May 9, 2009 and Mr. Ahmed on July 11, 2011 and attaches the membership agreements allegedly in effect during those dates. Id.

Interestingly, Ms. Griffith fails to state or otherwise provide evidence or attach documentation showing that either Ms. Sandler or Mr. Ahmed actually did agree to the membership agreement.[5]  Instead, she simply states that people using the iStockphoto website during those times would have been presented a box to the membership agreement and a button stating the user agrees to the terms.  Id.  In other words, Ms. Griffith is assuming the named plaintiffs were shown, asked to agree and actually did click agree to the membership agreement without actually providing any evidence this ever happened.  Stating this is what should have happened or normally happens is not the same as providing evidence it actually did happen.  See Madison Boardwalk, LLC v. Omega Commercial Fin. Corp., No. 13-CV-288-BBC, 2013 WL 5966175, at *1 (W.D. Wis. Nov. 8, 2013) (refusing to enforce forum selection clause in 11-page contract, signed by plaintiff, because defendant failed to provide evidence that plaintiff actually saw or agreed to forum clause contained in an addendum attached to the contract.”).

---

[5] In fact, the named Plaintiffs’ did not understand they were agreeing to litigate their claims in Alberta, Canada when they purchased their respective credits from Defendant.  See Declaration of Lisa Sandler; Declaration of Asif Ahmed.

DOCUMENT PREPARED
ON RECYCLED PAPER

iStockphoto has therefore failed to present evidence that the named plaintiffs or frankly any other potential class members ever agreed to an online membership agreement with a forum selection clause.  Any forum argument based on the existence a forum selection clause therefore fails.

### B.      The Forum Selection Clause is Invalid

iStockphoto's forum argument rests on applicability of Atl. Marine and its conditional modification of the Bremen test.  But as noted by the Supreme Court itself, Atl. Marine only applies to valid forum selection clauses.  See id. at 581 n. 5 ("Our analysis presupposes a contractually valid forum-selection clause.").  See Russel v. De Los Suenos, No. 13–CV–2081–BEN (DHB), 2014 WL 1028882, at *6 (S.D. Cal. Mar. 17, 2014) ("[T]his Court finds it appropriate for a court to consider Bremen arguments raised as a separate analysis [because] [t]he forum non conveniens analysis is predicated on the basic assumption that the clause is valid."); Frango Grille USA, Inc. v. Pepe's Franchising Ltd., 2014 WL 7892164 *3 (C.D. Cal. July 21, 2014) ("[Atl. Marine][] analysis, however, applies only to valid forum selection clauses.")

Here, the forum selection clause is invalid for a number of reasons.

### 1.      The Canada forum selection clause is unconscionable

**First**, the provision is unconscionable.  Under California law, "courts may refuse to enforce any contract found 'to have been unconscionable at the time it was made,' or may 'limit the application of any unconscionable clause.'" AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 131 S.Ct. 1740, 1746 (2011) (citing Cal. Civ. Code § 1670.5(a)).  As stated by the California Supreme Court (Sonic–Calabasas A, Inc. v. Moreno, (Sonic II), 57 Cal.4th 1109, 1133 (2013)), "The unconscionability doctrine ensures that contracts, particularly contracts of adhesion, do not impose terms that have been variously described as " "overly harsh" " (Stirlen v. Supercuts, Inc., 51 Cal.App.4th 1519, 1532 (1997), "'unduly oppressive'" (Perdue v. Crocker

DOCUMENT PREPARED
ON RECYCLED PAPER

National Bank, 38 Cal.3d 913, 925 (1985), … or 'unfairly one-sided' (Little v. Auto Stiegler, Inc., 29; Cal.4th 1064, 1071 (2003).  All of these formulations point to the central idea that unconscionability doctrine is concerned … with terms that are 'unreasonably favorable to the more powerful party' (8 Williston on Contracts (4th ed. 2010) § 18.10, p. 91)."

"Unconscionability is ultimately a question of law for the court." Pardee Construction Co. v. Superior Court, 100 Cal.App.4th 1081, 1088 (2002). Terms that may be stricken are those found to be both "procedurally" and "substantively" unconscionable, "the former focusing on 'oppression' or 'surprise' due to unequal bargaining power, the latter on 'overly harsh' or 'one-sided' results." Id. at 114. Courts balance the procedural and substantive aspects of unconscionability on a sliding scale. "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." Armendariz v. Foundation Health Psychcare Services, Inc., 24 Cal.4th 83, 114 (2000).

Here, the iStockphoto "clickwrap" membership agreement with its Canada forum selection clause located near the end (the user has to scroll almost all the way to the end to view it), is unquestionably a contract of adhesion and thereby procedurally unconscionable as a matter of law.  There was no negotiation of terms between iStockphoto and the proposed class members, it was presented on a take it or leave basis (if at all), and the proposed class members had no opportunity to opt out.  Pokorny v. Quixtar, Inc., 601 F.3d 987, 996 (9th Cir. 2010) (quoting Ting v. AT&T, 319 F.3d 1126, 1148 (9th Cir. 2003)) ("contract is procedurally unconscionable under California law if it is 'a standardized contract, drafted by the party of superior bargaining strength, that relegates to the subscribing party only the opportunity to adhere to the contract or reject it.' "); Aral v. EarthLink, Inc., 134 Cal.App.4th 544, 557 (2005) (finding "quintessential procedural unconscionability"

DOCUMENT PREPARED
ON RECYCLED PAPER

where "the terms of the [] agreement were presented on a 'take it or leave it' basis ... with no opportunity to opt out"); Merkin v. Vonage Am. Inc., No. 13–08026, 2014 WL 457942, at *6 (C.D. Cal. Feb. 3, 2014) ("Such 'take-it-or-leave-it' contracts of adhesion are frequently found to be oppressive under California law."); Sanchez v. Valencia Holding Co., LLC, 61 Cal.4th 899, 915 (2015) ("Here the adhesive nature of the contract is sufficient to establish some degree of procedural unconscionability.")

The Canada forum selection clause is also substantively unconscionable as it is 'overly harsh' and 'one-sided', particularly under these circumstances. This was not a negotiated contract between two parties with equal bargaining power—it was a contract of adhesion—presented on a take it or leave it basis from a sophisticated company to primarily individual users. The proposed class members are California residents, buying tranches of credits to obtain stock photos in California, from a website with a ".com" domain suffix (not a ".ca" denoting Canada), and accessed from computers in California, for use in California. Despite this, the forum selection clause limits jurisdiction to only Alberta Canada, conveniently the home of iStockphoto. Not only is this not in the state where the plaintiffs reside, it's not even in the same country. Given iStockphoto's obviously greater resources than a single California individual, the small amounts of money at issue, combined with the adhesive nature of the contract and the selection of a forum in a different country from the plaintiff, the Canada only forum selection clause is incredibly one-sided, overly harsh and substantively unconscionable. Little v. Auto Stiegler, Inc. (2003) 29 Cal.4th 1064, 1071, cert. denied, 540 U.S. 818, 124 S.Ct. 83 (2003) ("Substantively unconscionable terms may take various forms, but may generally be described as unfairly one-sided."); Harper v. Ultimo, 113 Cal.App.4th 1402, 1407 (2003) ("Substantive unconscionability focuses on the one-sidedness or overly harsh effect of the contract term or clause."); Bolter v. Superior Court, 87 Cal.App.4th 900,

- 20 -

DOCUMENT PREPARED
ON RECYCLED PAPER

908 (2001) (any terms which "impose an unreasonable burden" on the party with less bargaining power are regarded as substantively unconscionable); <u>24 Hour Fitness, Inc. v. Superior Court</u>, 66 Cal.App.4th 1199, 1213 (1998) (unenforceable terms are those that are "unduly harsh, oppressive or one-sided.").  And the forum selection clause is far from mutual, as it doesn't allow either party to sue in their own location. <u>Fitz v. NCR Corp.</u>, 118 Cal.App.4th 702, 723 (2004) ("In assessing substantive unconscionability, the paramount consideration is mutuality.")

iStockphoto's Canada forum selection clause is both procedurally and substantively unconscionable and therefore invalid and unenforceable.

### 2. The Canada forum selection clause is unreasonable, violates strong public policy, and would deprive Plaintiffs of their day in court

**Second**, in addition to being unconscionable, iStockphoto's Canada forum selection clause, forcing California residents to litigate against a corporation in a foreign country over small dollar amounts, on the basis of a provision in a contract of adhesion, is also invalid for being unreasonable, unjust and violating a strong public policy of California to protect its citizens from unfair business practices.  In <u>Bremen</u> at 15, the U.S. Supreme Court held that a forum selection clause should not be enforced if doing so would be "unreasonable and unjust" or that the clause was invalid for reasons such as fraud or overreaching (<u>i.e.</u>, unconscionable).  As held in numerous decisions, California courts are loathe to apply foreign forum selection clauses/choice of law provisions when they involve individually small monetary amounts that would impose a substantial or unreasonable travel burden to the plaintiff to collect that small amount.  <u>See e.g.</u>, <u>Aral v. EarthLink, Inc.</u>, <u>supra</u>, at 560-561. California courts will also often refuse to apply these foreign forum selection/choice of law provisions if doing so impacts on rights California law intends to provide (this is particularly true when applying UCL and similar consumer protective law).  <u>See</u> <u>Van Slyke v. Capital One Bank</u>, 503 F.Supp.2d 1353 (N.D. Cal. 2007) (refusing to

DOCUMENT PREPARED
ON RECYCLED PAPER

apply Virginia forum selection/choice of law provision in credit card agreement under California's UCL); <u>America Online Inc. v. Superior Court</u>, 90 Cal. App. 4th 1 (2001) (refusing to apply Virginia forum selection/choice of law provision of AOL service agreement because it would have impinged on rights provided by California law).  "A contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." <u>Richards v. Lloyd's of London</u>, 135 F.3d 1289, 1293 (9th Cir. 1998) (quoting <u>M/S Bremen v. Zapata Off–Shore Co.</u>, 407 U.S. 1, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)).

Here, again, the credits at issue were purchased by users outside of Canada (California), on a non-Canadian web address (".com"), for images downloaded outside of Canada for use outside of Canada under a membership agreement accepted and allegedly entered into outside of Canada which would then require users to enforce such rights by travelling to a foreign country to enforce the laws of a foreign country.[6]  Given the interest of California to protect the rights of its citizens and consumers from illegal or unfair business practices, and the small amounts individually at issue here, it is unreasonable to enforce this contract of adhesion Canada forum selection clause under these circumstances.[7]  This is particularly true as there is virtually no chance either of the plaintiffs or any of the proposed class members could or would pursue the low dollar amounts at issue if they had to travel, file, and conduct this case in Canada (most if not all of these claims are likely no more than a few hundred dollars).

---

[6] Both named plaintiffs reside in California and purchased their credits in California. <u>See</u> Declaration of Lisa Sandler; Declaration of Asif Ahmed.

[7] It should be noted that most if not all of the cases cited by iStockphoto where a forum selection clause is enforced, involved negotiated contracts between either businesses or sophisticated parties, usually for large dollar amounts.  This is quite different from the small dollar amounts here where the forum selection clause is the product of a consumer contract of adhesion.

DOCUMENT PREPARED
ON RECYCLED PAPER

In sum, the forum selection clause is invalid and unenforceable; the Atl. Marine forum analysis is therefore inapplicable.

### 3.    Atl. Marine does not apply when the forum is a foreign country.

In Martinez v. Bloomberg LP, 740 F.3d 211, 229-230 (2nd Cir. 2014), the Second Circuit reviewed the breadth of the holding of Atl. Marine.  It found it not to apply in the situation currently before the court—transfer to a foreign country.  In particular, the court noted that the Atl. Marine decision only directly addressed transfer from one federal district court to another based on a forum selection clause under 28 U.S.C. § 1404(a).  It found that "forum selection clauses pointing to foreign fora present distinct challenges not raised by clauses that merely point to other federal district courts.  In Petersen v. Boeing Co., 715 F.3d 276, 281 (9th Cir. 2013) for instance, the Ninth Circuit, applying the Bremen test, directed the district court to hold an evidentiary hearing to determine whether enforcement of a forum selection clause in an employment contract mandating proceedings in Saudi Arabia would effectively deprive the plaintiff of any remedy." Martinez at 229-230.

Accordingly, all of the Bremen factors (both private and public) must be reviewed in determining whether to dismiss here under forum non conveniens.[8]

_____

[8] Applying the Bremen factors demonstrate that California is the proper forum: (1) the location where the relevant agreements were negotiated and executed (California), (2) the state that is most familiar with the governing law (California), (3) the plaintiff's choice of forum (California), (4) the respective parties' contacts with the forum (plaintiffs are individuals located in California), (5) the contacts relating to the plaintiff's cause of action in the chosen forum (California individuals that gift card statute and UCL were designed to protect), (6) the differences in the costs of litigation in the two forums (burden much greater on plaintiffs to litigate in a foreign country than iStockphoto), (7) the availability of compulsory process to compel attendance of unwilling nonparty witnesses (Canada is Hague Member and iStockphoto does business in California, it must therefore make itself available here), and (8) the ease of access to sources of proof (documents and witnesses in both California and Canada). Jones v. GNC Franchising, Inc., 211 F.3d 495, 498-99 (9th Cir. 2000). The Court also considers "the relevant public policy of the forum state." Id. at 499 (strong public policy to protect California residents from unfair business practices).

DOCUMENT PREPARED ON RECYCLED PAPER

### 4. Even if <u>Atl. Marine</u> is Germane, Enforcement of the Forum Selection Clause Under the Facts of this Case is Unreasonable and Inappropriate

Even assuming the <u>Atl. Marine</u> modification to the <u>Bremen</u> forum test were applicable, the forum selection clause is still unenforceable because (1) the public interest factors militate against dismissal and (2) the clause itself "violates fundamental fairness." <u>Atl. Marine</u>, 134 S. Ct. at 581 n.6. Public interest factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." <u>Id.</u>

### a) Public interest factors overwhelmingly support plaintiffs

(1) As documented in numerous articles readily available on the Internet[9] in the last few years, Canada courts have simply become overwhelmed with court congestion. Time to trial has risen from a 12 to 18 months in the late 1960s to over 2.5 years today (with many trials taking much longer). Keeping the case in California would greatly expedite the judicial process.

(2) This case involves California residents/consumers purchasing credits in California, using a computer in California, from a website accessible in California, ultimately for images for use in California. Other than defendant's headquarters being located in Alberta, Canada, everything about this case involves California. California has a significant interest in protecting its residents and consumers from illegal and unfair practices under these circumstances.

(3) California courts are more familiar with applying California UCL and gift card law than a court in Alberta and thus have an interest in keeping the trial here.

---

[9] Declaration of Brandon C. Fernald, Exhibit A (attaching multiple articles regarding Canadian court congestion)

DOCUMENT PREPARED ON RECYCLED PAPER

1   Taken together, all of the public interest factors mitigate against dismissal
2   under forum non conveniens.

### b)   Fundamental fairness

4   Enforcing the forum selection clause under the circumstances would be
5   fundamentally unfair.  First, the clause was not the product of a negotiation process,
6   with your typical give and take.  It was presented on a take it or leave it basis, from
7   a company to a consumer web user—in a so-called "clickwrap" contract of
8   adhesion.[10]  Second, everything about this case (place of purchase, place of injury,
9   etc.) takes place and involves California, other than the location of the Defendant.
10  And third, the dollar amounts individually at issue are tiny, no more than a few
11  hundred dollars.  There is simply no way any of the plaintiffs or proposed class
12  members would pursue litigation in a foreign country given the above.  Moreover, a
13  review of Canada law in Alberta makes unclear whether an individual (or class) could
14  even pursue this case or whether it would be left up to a Canada consumer protection
15  agency.

16  Given the circumstances, enforcing the Canada forum selection clause would
17  not only be fundamentally unfair, but would effectively deprive Plaintiffs of their
18  day in court—no plaintiff would risk time, money, travel and effort to pursue such a
19  small claim in a foreign country.

## CONCLUSION

21  For the above-stated reasons, Defendant's motion to dismiss should be denied
22  in its entirety.

---

[10] Tellingly, many of the cases cited by iStockphoto that enforce the forum selection clause note the outcome would likely be different if (1) the case involved a contract of adhesion, (2) the plaintiff argued the clause was invalid or (3) the facts were more directly tied to the forum chosen by the plaintiff.  See e.g., Russel v. De Los Suenos, supra, at *6 (S.D. Cal. Mar. 17, 2014) ("The Court notes that Plaintiffs do not allege that the clause should be invalidated because of any fraud or duress. The contract in question was not a contract of adhesion…")

DOCUMENT PREPARED
ON RECYCLED PAPER

1

2

DATED:  December 14, 2015          BRANDON C. FERNALD
                                   **FERNALD LAW GROUP LLP**

3

4

By:   */s Brandon C. Fernald*
        Brandon C. Fernald

5

6

Attorneys for Plaintiffs Lisa Sandler and
Asif Ahmed and Proposed Class

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DOCUMENT PREPARED
ON RECYCLED PAPER